**STATE of Maine**

v.

**Clarence GOSSELIN.**

Supreme Judicial Court of Maine.

Argued May 22, 1991.

Decided Aug. 2, 1991.

Michael Carpenter, Atty. Gen., Donald W. Macomber (orally), Pamela Ames, Asst. Attys. Gen., Augusta, for plaintiff.

Robert Mullen (orally), Linnell, Choate & Webber, Auburn, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

McKUSICK, Chief Justice.

At the conclusion of a jury-waived trial, the Superior Court (Androscoggin County, *Delahanty, C.J.*) convicted defendant Clarence Gosselin of manslaughter, 17–A M.R.S.A. § 203(1)(A) (Supp.1990), and imposed the maximum 40–year sentence of imprisonment, 17–A M.R.S.A. § 1252(2)(A) (Supp.1990). Defendant has taken appeals from both the conviction and the sentence, but this opinion addresses only the first of those appeals.[1] We affirm the conviction.

On September 21, 1989, defendant and two of his friends spent part of the afternoon target shooting with defendant's handgun, then drove to the boat landing at Lake Auburn. As they sat in their car drinking, a second car pulled into the parking lot. The driver, Irving Woodward, who was unknown to the trio, got out and walked into the woods nearby. Making a derogatory comment apparently referring to Woodward, defendant took his gun and followed Woodward into the woods. A few minutes later the friends heard a gunshot, and defendant ran out of the woods shouting, "I shot him. I shot him." The trio drove off leaving Woodward in the woods, where he died of the gunshot wound.

The autopsy showed that Woodward had been shot with a .25–caliber semiautomatic

---

1. We have set the sentence appeal down for reargument.

pistol. During their investigation of Woodward's death, the police received information that defendant had admitted to the shooting and that a potential witness lived with a girlfriend in an apartment in Lewiston. On September 26, 1989, police obtained from their files a picture of defendant, now their primary suspect, and went to the apartment. Expecting to find the witness and his girlfriend, the police were surprised when defendant opened the door. He stepped out onto the porch and spoke briefly to the officers. When the officers asked if he would accompany them to the police station, defendant agreed. Because defendant was in his stocking feet and the day was wet and cold, one of the officers suggested that defendant put his shoes on before coming with them. Defendant then reentered the apartment, leaving the door open behind him. Defendant made no protest when the police followed him into the apartment. As defendant prepared to leave with the police, he asked if he could leave some "stuff" behind. Receiving an affirmative answer, he reached into his pants pocket and pulled out a holstered, small-caliber handgun, which he moved, with no attempt at concealment, to place into a drawer. One of the detectives grabbed the gun before it fell into the drawer.

The officers took defendant to the police station where they interviewed him for more than two hours without defendant's making any incriminating statements. Around midnight, a different detective came in and began questioning defendant, reassuring him and telling defendant that he was there to help. Shortly thereafter defendant admitted to having shot Woodward, stating that he had only shot him after Woodward had approached him in a menacing manner.

Defendant was indicted for murder, 17-A M.R.S.A. § 201(1) (1983). The court denied his pretrial motion to suppress statements and evidence taken from him on September 26 and 27, 1989. Trial began on May 7, 1990. At the conclusion of the State's case, defendant moved for an acquittal on the murder charge. The court granted the motion but continued the trial on the lesser

included charge of manslaughter, 17-A M.R.S.A. § 203(1)(A), ultimately finding defendant guilty of having recklessly caused Woodward's death.

## I.

### *Denial of Defendant's Motion to Suppress Evidence*

■ Defendant argues that because the police entered the apartment without a warrant, the evidence they obtained as the result of that entry, specifically the gun, should have been suppressed. We disagree. The police officers went to the Lewiston apartment expecting to interview two potential witnesses. To their surprise, they were met at the door of the apartment by the murder suspect himself. They believed him to be armed. When he turned and reentered the apartment to put on his shoes, leaving the door open behind him, they appropriately followed him in. They entered with at least his acquiescence. They could not have been expected to have come prepared with a warrant or to leave at that time to obtain one. They had a valid safety concern in making sure that he did not come back out with a gun or that some other person within the apartment did not present them with an unexpected danger. The police entry into the apartment was thus justified under the exigent circumstances exception to the warrant requirement. *Cf. State v. Boilard*, 488 A.2d 1380, 1384 (Me.1985) (routine investigation of report of possible criminal activity not sufficient for finding of exigent circumstances).

■ Once they were lawfully in the apartment, they could properly seize any evidence of a crime that came into plain view. *See State v. Harriman*, 467 A.2d 745, 748 (Me.1983). When defendant openly displayed a gun matching the description of that used in the shooting, the police properly seized the gun. Under a combination of the exigent circumstances and plain view doctrines, the court committed no error in denying defendant's motion to suppress the gun.

## II.

*Suppression of Defendant's Statements*

■ Defendant contends that the police illegally seized his person at the Maple Street apartment, requiring that the court suppress all his subsequent statements. *See State v. LeGassey*, 456 A.2d 366, 368 (Me.1983). This argument is without merit. There was no seizure of defendant's person until after the police had probable cause to arrest. Defendant's voluntary agreement to accompany the police to the station when they asked him to do so did not put him into police custody. *See State v. Bleyl*, 435 A.2d 1349, 1357–58 (Me.1981). Later when the police seized defendant's gun inside the apartment, they had probable cause to take him into custody. That probable cause arose from the report of a third party that defendant had admitted to shooting Woodward and defendant's possession of a handgun matching the description of the gun used to commit the crime. Whether the police formally arrested defendant at that time or effected the equivalent of an arrest by taking him back to the police station, any seizure of defendant was legal and his subsequent statements not subject to suppression.

## III.

*Validity of Defendant's Waiver of his Miranda Rights*

■ The admissibility of defendant's statements requires a finding by a preponderance of the evidence that he knowingly, intelligently, and voluntarily waived his *Miranda* rights, *see State v. Bleyl*, 435 A.2d at 1358, and that his statements were voluntary beyond a reasonable doubt, *see State v. Collins*, 297 A.2d 620, 627 (Me. 1972). Although defendant has been diagnosed as having various personality disorders and has an I.Q. that reflects borderline mental retardation, his intellectual limitations do not *per se* demonstrate his inability to waive his *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 170–71, 107 S.Ct. 515, 523–24, 93 L.Ed.2d 473 (1986); *State v. Knights*, 482 A.2d 436, 440–41 (Me.1984). The record supports the court's

finding that defendant's waiver was knowing and intelligent. Not only did he indicate that he understood each of the *Miranda* warnings as it was read to him, but when the officer forgot to read the fifth warning, defendant prompted him, asking, "Can I stop at any time?" During the interrogation defendant asked several times when he would be allowed to leave. Contrary to his contention on appeal, those queries did not constitute a clear assertion of his right to terminate the questioning. It was not clearly erroneous for the court to find that the detectives' follow-up questions were acceptable attempts to determine what defendant wanted to do. *See State v. Ladd*, 431 A.2d 60, 62 (Me.1981).

■ Similarly, defendant's contention that his statements were involuntary is without merit. Neither the detective's engaging defendant in banter nor his encouraging defendant to tell the truth constituted the overbearing of the suspect's free will and rational intellect that requires a finding of involuntariness. *See State v. Caouette*, 446 A.2d 1120, 1123 (Me.1982); *State v. Theriault*, 425 A.2d 986, 990 (Me. 1981). The interrogation lasted about three hours, not so long a time as to constitute coercion, and defendant presented no evidence that the police were at any time abusive or hostile. On this record the court's finding that defendant's confession was voluntary beyond a reasonable doubt is not clearly erroneous.

## IV.

*Sufficiency of the Evidence*

■ On his conviction, defendant finally contends that there was insufficient evidence for the court to find beyond a reasonable doubt that he possessed the necessary *mens rea* to commit manslaughter by recklessly causing Woodward's death. 17–A M.R.S.A. § 35(3)(A) (1983) provides that "[a] person acts recklessly with respect to a result of his conduct when he consciously disregards a risk that his conduct will cause such a result. That disregard of risk "must involve a gross deviation from the standard of conduct that a reasonable or prudent person would observe in the same

situation." *Id.* § 35(3)(C). The record amply supports the court's ultimate finding that defendant consciously disregarded a risk that he might kill someone. For no particular reason, he was carrying a loaded handgun that he knew to be in working order. He took the gun with him when he left the car and followed Woodward into the woods, thereby setting the stage for the later events. On this record it was no error for the court to find that defendant possessed beyond a reasonable doubt the necessary *mens rea* to support his conviction. *See State v. Barry,* 495 A.2d 825, 826 (Me.1985).

The entry is:

Judgment of conviction affirmed.

All concurring.