1997 ME 112

**STATE of Maine**

v.

**John COLE.**

Supreme Judicial Court of Maine.

Argued Jan. 6, 1997.

Decided May 22, 1997.

Michael E. Povich, District Attorney, Paul F. Cavenaugh, II, Asst. Dist. Atty. (orally), Calais, for State.

Jeffrey C. Toothaker (orally), Toothaker & Chong, Ellsworth, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

ROBERTS, Justice.

[¶ 1] John Cole appeals from the judgments of conviction entered in the Superior Court (Washington County, *Calkins, J.*) on jury verdicts finding him guilty on one count of gross sexual assault (Class A) in violation of 17–A M.R.S.A. § 253 (Supp.1996), one count of burglary (Class B) in violation of 17–A M.R.S.A. § 401 (1983 & Supp.1996), and one count of aggravated assault (Class B) in violation of 17–A M.R.S.A. § 208 (1983). At the trial, the court denied Cole's attempt to offer evidence of an alternative perpetrator and admitted identification evidence consisting of a scent track performed by a trained police dog. Prior to the trial, the court (*Mead, J.*) denied Cole's motion to suppress evidence of a confession he gave to police. Cole argues the court erred in denying his motion to suppress and with respect to its evidentiary rulings. We affirm the judgments.

[¶ 2] In the early morning of July 17, 1995, Baileyville police were called to the scene of an alleged rape. The perpetrator had broken into the victim's house where she lived with her young son and raped her at knifepoint, thereafter fleeing the scene. The defendant, John Cole, lived on the victim's street. He called police to report that early in the morning he saw someone run by his house and drop a knife in his yard. The police arrived at Cole's house and stayed outside in his driveway, talking with him for about 45 minutes. During this interval a state police canine team, consisting of a trooper and a trained dog, tracked human scent from the victim's house to Cole's driveway. The team immediately performed a second track, which led to a vehicle in Cole's driveway in which he had recently been sitting. On both occasions when the team reached Cole's driveway he was inside his house.

[¶ 3] The suspicions of the police began to center on Cole. In the afternoon of July 17 he voluntarily submitted to questioning at the station house. This interview lasted for three hours, was tape recorded, and was variously conducted by Baileyville police officers and two state police detectives. They told Cole they believed he committed the rape and that he should confess. Cole repeatedly denied his involvement in the crime. At one point Baileyville police officer Richard Rolfe told Cole that his wife and two children would have to be questioned. Rolfe also reminded Cole that a year earlier Rolfe and personnel from the Department of Human Services had temporarily removed Cole's children from his and his wife's custody. One of the state police detectives then implied to Cole that if he were the rapist, "the Department of Human Services [is] going to have to be contacted ... and you know why." Cole responded affirmatively, after which Rolfe said, "So what's next? I don't want to have to come back and take your kids again, John." Cole replied, "You ain't going to have to because I didn't do it."

[¶ 4] At 7:00 p.m., after the interview was finished, Cole was placed under arrest and held at the station house. At 9:15 p.m. Rolfe took Cole to the county jail in a police cruiser, a trip lasting 45 minutes. Also in the cruiser was an emergency medical technician who was prepared to assist if Cole, an epileptic, suffered a seizure. During the drive, Rolfe twice urged Cole to "do the right things for his wife and family" by telling the truth. Other than those two statements, the police made no efforts to question Cole after the interview at the station house. When Cole arrived at the jail at 10:00 p.m. he asked to speak with Rolfe privately, at which time he gave a full and complete confession of the rape.

[¶ 5] At the trial, the defendant cross-examined the victim concerning the rapist's statement, made during the commission of the crime, that he was performing a favor for someone else. The victim testified she asked the rapist whether he was acting for her estranged husband, who at the time of the rape lived across the street from her. The rapist's only reply was "I think you know the answer." The defendant then attempted to introduce evidence that one week prior to the rape, the victim obtained a protection from abuse order against her estranged husband. The court ruled that evidence of the order was inadmissible and stopped the defendant from inquiring further into why the victim asked her attacker if he were acting for her estranged husband.

## I.

### Evidence of the Confession

 [¶ 6] Cole contends his confession should have been suppressed because it was made involuntarily as the result of psychological coercion. We disagree. The State bears the burden of establishing beyond a reasonable doubt that a statement made to investigators by a defendant is voluntary. *State v. Smith*, 615 A.2d 1162, 1163 (Me.1992). A trial court should determine whether a statement is voluntary by considering the totality of the circumstances. *Id.* "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coerced police conduct, and if under all the circumstances its admission would be fundamentally fair." *Id.* (quoting *State v. Mikulewicz*, 462 A.2d 497, 501 (Me.1983)). We review for clear error a trial court's finding that the State has met its burden as to voluntariness. Smith, 615 A.2d at 1163.

 [¶ 7] In this case there was competent evidence to support the trial court's finding that Cole's confession was voluntary. Although he was repeatedly coaxed to confess, that in itself does not render his confession involuntary. See, e.g., *State v. Theriault*, 425 A.2d 986, 990 (Me.1981) (a mere admonition or exhortation to tell the truth, as opposed to a promise of prosecutorial leniency, does not render a confession involun-

tary). Nor is it decisive that the police at times conducted themselves in a confrontational manner. See, e.g., *State v. Candage*, 549 A.2d 355, 359–60 (Me.1988)(defendant's statements were voluntary even though the interviewing officer "conducted the interrogatories in a confrontational way"). Cole voluntarily submitted to questioning, the duration of the interview was not excessive, he was given several opportunities to take a break, and he was informed by one of his interrogators that they were not "offering [him] any deals with the D.A.'s office." Given the totality of the circumstances, we cannot say the trial court's decision was clearly erroneous.

## II.

### Scent Tracking Evidence

 [¶ 8] Cole challenges the trial court's decision to admit the evidence of human scent tracking performed by the state police canine team, Trooper Timothy McCadden and his dog Zak, at the scene of the rape. McCadden testified to his conclusion that Zak tracked Cole's scent from where the rapist entered the victim's house back to Cole's house. By way of foundation, McCadden testified that he and Zak had been together as a team since April 1992 and had received training together, including tracking training, at a sixteen-week Maine State Police K–9 school. They received two days of in-service training per month and underwent a recertification every six months, which included a performance test that evaluated the team's tracking ability. McCadden also testified that prior to the tracking performed at the scene of the rape, he and Zak had successfully tracked people both in actual cases and in training exercises.

[¶ 9] The trial court did not abuse its discretion by admitting in evidence McCadden's testimony. See *State v. Case*, 672 A.2d 586, 588 (Me.1996) (decision to admit or exclude evidence is reviewed for abuse of discretion). The law of a majority of states is that evidence of dog tracking is admissible to prove identity provided a proper foundation is laid. *See* Annotation, *Evidence of Trailing By Dogs in Criminal Cases*, 18 A.L.R.3d 1221 (1968 & Supp.1996). In this case McCadden

testified that he and Zak had received extensive training together in tracking human scent, that Zak had previously successfully tracked humans, and that Zak had been placed on the trail where circumstances indicated the perpetrator had recently been. This foundation was sufficient to permit McCadden's testimony.

### III.

#### Alternate Perpetrator Evidence

[¶ 10] Cole argues that the court erred by excluding evidence of the victim's protection from abuse order against her estranged husband and by preventing the defendant from inquiring any further into why the victim asked her attacker if he was acting for her estranged husband. The defendant concedes that he had no evidence to identify a specific alternate perpetrator. He argues, however, that the statement of the rapist, coupled with the protection from abuse order, suggests that the victim's estranged husband solicited the attack on her. He proposed to present testimony of the husband to the effect that the husband was not acquainted with Cole. The introduction of such evidence would have required the jury to consider several additional issues. First, was the victim's perception and recollection of the rapist's statements accurate? Second, was the rapist speaking honestly or perpetrating a hoax? Third, if in fact the estranged husband solicited the rape, would his denial of any acquaintance with the defendant be persuasive? We conclude that the probative value of that evidence is slight and that the court could properly exclude such evidence pursuant to M.R. Evid. 403 to avoid confusion of the issues and misleading the jury. *See State v. Boobar,* 637 A.2d 1162, 1172 (Me.1994) (the probative value of alternate perpetrator evidence must be weighed against the danger of confusing or misleading the jury).

The entry is:

Judgments affirmed.