1998 ME 1

**STATE of Maine**

v.

**Sandra E. COOMBS.**

Supreme Judicial Court of Maine.

Argued Sept. 5, 1997.
Decided Jan. 2, 1998.

Stephanie Anderson, District Attorney, Julia Sheridan, Asst. Dist. Atty. (orally), Portland, for the State.

Gail E. Peabody (orally), Orr's Island, for defendant.

Before WATHEN, C.J., and ROBERTS, RUDMAN, DANA and LIPEZ, JJ.

WATHEN, Chief Justice.

[¶ 1]   Sandra E. Coombs appeals from the judgment of conviction entered in the Superi-

or Court (Cumberland County, *Crowley, J.*) following a jury verdict finding her guilty of theft.[1] On appeal, she challenges the order entered in the District Court (West Bath, *Field, J.*) denying her motion to suppress her confession. She argues that the court erred in finding that her confession was voluntary and that she waived her *Miranda* rights before she confessed. Finding no error, we affirm.

[¶ 2] The facts set forth in the record may be briefly summarized as follows: On December 16, 1995, L.L. Bean store detective Keane McGarvey responded to a possible theft. A man had attempted to return a woman's sweater for a refund, claiming that it had been purchased a week earlier. The man was unable to produce a receipt and the store's inventory system indicated that the sweater had been placed on the sales floor that day. Concluding that the sweater had likely been stolen, McGarvey questioned the man. The man said that the sweater belonged to a friend, and that the friend and Coombs were waiting for him in the parking lot.

[¶ 3] After contacting the Freeport Police Department, McGarvey and another store detective located the friend and Coombs in a car in the parking lot. The two detectives watched the car until Freeport police Sergeant Terry Carter arrived. Sergeant Carter approached the vehicle, asked for the registration, and observed Coombs open the glove compartment, revealing a small bag of marijuana. Sergeant Carter confiscated the bag and McGarvey asked Coombs if she would return to the store to discuss the sweater incident. Coombs agreed and voluntarily accompanied McGarvey to the store. McGarvey did not physically restrain Coombs.

[¶ 4] At the store, Sergeant Carter performed a records check and discovered that there was an outstanding warrant for Coombs' arrest for failure to pay fines. When informed of the warrant, Coombs began to cry and said that she did not want to go to jail. Pursuant to the warrant, Sergeant Carter arrested and handcuffed

Coombs. He did not ask her any questions or try to elicit incriminating responses from her.

[¶ 5] Sergeant Carter transported Coombs to the Freeport police station and placed her in an interrogation room. He then read Coombs her *Miranda* rights. Coombs indicated that she understood her rights and was willing to answer questions. During the interrogation, Sergeant Carter intermittently left and re-entered the room, telling Coombs that the other man being questioned had implicated her in the theft of the sweater. Coombs was handcuffed to a horizontal pole running through the center of the room while Sergeant Carter was out of the room. She was handcuffed for 15–30 minutes and was able to sit down during that time.

[¶ 6] Although Coombs cried periodically throughout the interrogation, she did not tell Sergeant Carter that she wanted the interrogation to cease. After a two- or three-hour interrogation, Coombs confessed her involvement in the theft of the sweater. Sergeant Carter then asked her to make a voluntary written statement and she agreed, preparing a signed, written confession that was consistent with her verbal statements. Following the denial of a suppression motion, the confession was admitted at trial and the jury returned a guilty verdict. Defendant now appeals, and argues that we must review both suppression rulings *de novo.*

### *Voluntariness of the Confession*

[¶ 7] Whether a confession is voluntary is primarily a question of fact, *see, e.g., State v. Wood,* 662 A.2d 908, 911 (Me. 1995); *State v. Tardiff,* 374 A.2d 598, 600 (Me.1977), and we review the suppression judge's determination for clear error. *See, e.g., State v. Cole,* 1997 ME 112, ¶ 6, 695 A.2d 1180, 1182; *State v. Smith,* 615 A.2d 1162, 1163 (Me.1992); *State v. Pinkham,* 510 A.2d 520, 522 (Me.1986). The suppression judge must consider the totality of the circumstances in determining whether a confession is voluntary, *State v. Smith,* 615 A.2d at 1163,

---

1. "A person is guilty of theft if he obtains or exercises unauthorized control over the property of another with intent to deprive him thereof." 17-A M.R.S.A. § 353(1) (1983).

and the inquiry is fact intensive. The opportunity to view witnesses and assess their credibility demands that we review the suppression judge's resolution of factual issues deferentially under the clear error standard. *State v. Cefalo*, 396 A.2d 233, 239 (Me.1979); *cf. State v. Reardon*, 486 A.2d 112, 119 (Me. 1984). Deference is also warranted by the fact finder's "particular expertise" and recognition of "its proper institutional role." *Casco N. Bank v. JBI Assocs.*, 667 A.2d 856, 859 (Me.1995).

■ [¶ 8] Although findings of fact are reviewed deferentially, the application of legal principles to those findings is reviewed independently. *See State v. Cefalo*, 396 A.2d at 240 (noting that trial court's legal conclusions, drawn from findings of historical facts, are "subject to the independent examination and judgment of the Law Court."); *State v. Arnheiter*, 598 A.2d 1183, 1185 (Me.1991) (reviewing trial court's factual findings for clear error and trial court's legal conclusions for error); *State v. Johnson*, 413 A.2d 931, 933 (Me.1980) ("Since the challenges here are to the legal conclusions of the Superior Court Justice, and not to his findings of fact, the clearly erroneous standard is inapplicable."). Independent appellate review of legal conclusions is appropriate because the reviewing court "is in as good a position as the trial judge to determine whether the historical facts warrant a legal conclusion...." *State v. Cefalo*, 396 A.2d at 239. The rationale that demands deferential review of the trial court's findings of historical facts does not require that we accord the same level of deference to the trial court's conclusions of law.

[¶ 9] This bifurcated approach to the standard of review is supported by decisions of the United States Supreme Court. For example, the issue presented in *Miller v. Fenton*, 474 U.S. 104, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985), was whether a state-court determination of the voluntariness of a confession was a factual issue entitled to a presumption of correctness pursuant to 28 U.S.C. § 2254(d) in a federal habeas corpus proceeding.[2] Holding that voluntariness was a legal issue warranting plenary federal review, the court stated that

> the nature of inquiry itself lends support to the conclusion that "voluntariness" is a legal question meriting independent consideration in a federal habeas corpus proceeding. Although sometimes framed as an issue of "psychological fact," the dispositive question of the voluntariness of a confession has always had a uniquely legal dimension.

*Id.* at 115–16, 106 S.Ct. at 452. The court cautioned, however, that

> subsidiary questions, such as the length and circumstances of the interrogation, the defendant's prior experience with the legal process, and familiarity with the *Miranda* warnings, often require the resolution of conflicting testimony of police and defendant. The law is therefore clear that state-court findings on such matters are conclusive on the habeas court....

*Id.* at 117, 106 S.Ct. at 453. Thus, *Miller* established a two-pronged standard of review: clear error for findings of fact and de novo or independent review for conclusions of law. We agree that the dispositive issue of the voluntariness of a confession, although based on all the facts and circumstances surrounding the confession, is a legal issue warranting independent appellate review.

■ [¶ 10] A confession is admissible in evidence only if voluntary, *State v. Philbrick*, 481 A.2d 488, 494 (Me.1984), and the State bears the burden of establishing voluntariness beyond a reasonable doubt. *State v. Snow*, 513 A.2d 274, 276 (Me.1986). "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all the circumstances its admission would be

---

**2.** In pertinent part, 28 U.S.C. § 2254(d) (1992) provides:

(d) In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination after a hearing on the merits of a factual issue, made

by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State ... were parties ... shall be presumed to be correct, unless ...

(8) ... the Federal court ... concludes that such factual determination is not supported by the record as a whole.

fundamentally fair." *State v. Mikulewicz,* 462 A.2d 497, 501 (Me.1983). Coombs argues that her confession was involuntary because Sergeant Carter promised that she would not be charged with possession of marijuana if she confessed to the theft. She also argues that her confession was the product of coercive police activity. We reject both arguments.

■■■■ [¶ 11] A confession motivated by a promise of leniency by a person with apparent authority to execute the promise is involuntary and inadmissible. *State v. Tardiff,* 374 A.2d 598, 601 (Me.1977). At the suppression hearing, Sergeant Carter testified that he did not promise Coombs anything in exchange for her confession and, although he conceded that he flushed the marijuana down the toilet, he denied telling Coombs that she would not be charged with possession if she confessed to the theft.[3] Although Coombs testified to the contrary, the suppression judge, as the fact finder, was free to accept Sergeant Carter's testimony over Coombs'. *See State v. Larrivee,* 479 A.2d 347, 349 (Me.1984); *State v. Knights,* 482 A.2d 436, 442 (Me.1984). The trial court's finding is based on competent evidence and is not clearly erroneous.[4] *See State v. Navarro,* 621 A.2d 408, 413 (Me.1993).

■■■■ [¶ 12] We also reject Coombs' argument that her confession was coerced. The length of the interrogation was not inherently coercive, *see State v. Gosselin,* 594 A.2d 1102, 1105 (Me.1991) (holding that under the circumstances three hour interrogation did not amount to coercion), nor does the fact that Coombs was crying and upset during interrogation, without more, render her confession involuntary. *See State v. Durepo,* 472 A.2d 919, 921 (Me.1984). Sergeant Carter testified that he did not threaten Coombs, that Coombs voluntarily confessed to the theft, and that she agreed to sign a written

confession after he informed her that she was not required to do so. Coombs was not interrogated continuously and was handcuffed to the pole only when Sergeant Carter left the room. Sergeant Carter estimated that she was handcuffed to the pole no longer than thirty minutes. Under these circumstances, the suppression judge did not err as a matter of law by concluding that Coombs' confession was voluntary.

### Waiver of Miranda Rights

■■■■ [¶ 13] We have previously held that a suppression judge's findings regarding *Miranda* issues are reviewed for clear error. *See State v. Cooper,* 617 A.2d 1011, 1013 (Me.1992); *State v. Leone,* 581 A.2d 394, 397 (Me.1990); *State v. Barczak,* 562 A.2d 140, 144 (Me.1989). Whether a defendant has validly waived her *Miranda* rights depends on the factual circumstances of the interrogation. *State v. DeLong,* 505 A.2d 803, 808 (Me.1986). Although the trial court's resolution of those factual issues is reviewed for clear error, the ultimate issue of waiver has a "uniquely legal dimension," *Miller v. Fenton,* 474 U.S. at 116, 106 S.Ct. at 452, which merits independent appellate review. *See United States v. Guay,* 108 F.3d 545, 549 (4th Cir.1997); *United States v. Mills,* 122 F.3d 346, 350–51 (7th Cir.1997); *United States v. Anderson,* 79 F.3d 1522, 1525 (9th Cir.1996); *United States v. Toro–Pelaez,* 107 F.3d 819, 826 (10th Cir.1997); *United States v. Chirinos,* 112 F.3d 1089, 1102 (11th Cir.1997).

[¶ 14] Coombs contends that her confession should have been suppressed because she did not validly waive her *Miranda* rights prior to giving the confession. Coombs concedes that Sergeant Carter read to her the warnings required by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and that she understood those warn-

---

3. Sergeant Carter testified that he found a "very small quantity of marijuana" in the glove compartment of Coombs' car. Possession of a usable amount of marijuana is a civil violation pursuant to 22 M.R.S.A. § 2383 (1992).

4. The suppression judge found that "there were no promises which would give rise to a constitutional infirmity[.]" Coombs contends that this finding is ambiguous, that it is unclear whether

the suppression judge found that no promise had been made or that a promise of no constitutional significance had been made. Because we assume that the suppression judge found for the prosecution on all issues of fact necessarily raised by his denial of the motion to suppress, *State v. Cefalo,* 396 A.2d at 239 n. 12, we reject Coombs' contention.

ings. In support of her argument, Coombs points to her testimony that she asked to be left alone several times during the interrogation.

[¶ 15] "[T]o constitute a valid waiver, a defendant's conduct must amount to an 'intentional relinquishment or abandonment of a known right or privilege.'" *State v. Knights*, 482 A.2d at 440. An explicit oral or written statement is not an essential component of a valid waiver of *Miranda* rights. *State v. DeLong*, 505 A.2d at 808 (*citing North Carolina v. Butler*, 441 U.S. 369, 373, 375–76, 99 S.Ct. 1755, 1757, 1758–59, 60 L.Ed.2d 286 (1979)). The State bears the burden of establishing a knowing, intelligent, and voluntary waiver of *Miranda* rights by a preponderance of the evidence. *State v. Snow*, 513 A.2d 274, 276 (Me.1986).

[¶ 16] Sergeant Carter testified that, at the police station, he read Coombs her *Miranda* rights from a printed form taped to the desk in the interrogation room. He also testified, and Coombs concedes, that she stated that she understood her rights and did not invoke her right to counsel. Sergeant Carter also testified that Coombs told him that she was willing to answer any questions he had for her. The trial court's factual finding that Coombs did not tell Sergeant Carter that she wanted to terminate the questioning is supported by Sergeant Carter's testimony, and therefore is not clearly erroneous. As to the ultimate issue of waiver, under these circumstances, the court did not err by concluding that Coombs made a knowing, intelligent and voluntary waiver of her *Miranda* rights. *See State v. Snow*, 513 A.2d at 276 (holding that defendant validly waived *Miranda* rights when defendant indicated he understood the warnings and wanted to talk about the incident).

The entry is:

Judgment affirmed.

WATHEN, C.J., and ROBERTS, RUDMAN, and LIPEZ, JJ., concur.

DANA, J., dissents.

DANA, Justice, dissenting.

[¶ 17] I respectfully dissent. Although I agree with the Court's recognition of the propriety of a bifurcated approach to reviewing questions of the voluntariness of a confession and the waiver of the rights protected pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), I cannot, in these circumstances, join in the Court's affirmance of the District Court's finding that Coombs' confession was voluntary beyond a reasonable doubt.

[¶ 18] The State bears the burden of proving a confession voluntary beyond a reasonable doubt before it can be admitted in evidence against the defendant. *State v. Wood*, 662 A.2d 908, 911 (Me.1995). The suppression court's factual findings regarding voluntariness will be upheld unless the evidence compels a contrary inference. *See State v. Simmons*, 435 A.2d 1090, 1093 (Me. 1981). In my opinion, the totality of the circumstances, even when viewed in the light most favorable to the State, compels a reasonable doubt as to the voluntariness of Coombs' confession.

[¶ 19] Coombs, while in custody after being arrested on a bench warrant for failure to pay a fine, was subjected to a three-hour interrogation regarding a completely unrelated offense, intermittently handcuffed, not allowed to make a phone call, and her request to be informed as to her bail on the outstanding fine went unheeded. She was crying, denying the theft charge, and expressing her fear of going to jail. Sergeant Carter could not even recall providing her with a glass of water, a tissue, or the use of the bathroom over the three-hour period, although he testified that she cried easily, was emotional, and needed breaks to gain her composure (during which he handcuffed her to a pole running through the interrogation room). Sergeant Carter admitted that he told Coombs that he would "in all probability be charging her with [possession of marijuana]." Coombs testified that Sergeant Carter said, "I could take two charges of theft and possession of marijuana or I could confess to the theft and he'd flush the marijuana." It is undisputed that immediately after Coombs signed a confession to the theft of a sweater, Sergeant Carter

flushed some quantity of marijuana down the toilet and ripped up an already completed summons for possession of the drug. He even made a point of inviting Coombs into the bathroom to watch. The State conceded at oral argument that this destruction of evidence was beyond the authority granted to the officer.[5] At the suppression hearing, Sergeant Carter offered no explanation for his act of destroying evidence.

[¶ 20] The court did not find that no promise was made to Coombs.[6] It did state that there had been "no promises which would give rise to a constitutional infirmity." The Court's reference to *State v. Tardiff*, 374 A.2d 598 (Me.1977) and its bright line rule that any promise renders a confession involuntary forces the Court to assume that the District Court found that no promise was made. *See supra* note 4. The Court's reliance on *Tardiff*, which based its holding on *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), fails to account for the Supreme Court's recent limitation of *Bram*. *See Arizona v. Fulminante*, 499 U.S. 279, 285–86, 111 S.Ct. 1246, 1251–52, 113 L.Ed.2d 302 (1991) (recognizing that the current standard for determining the voluntariness of a confession is the totality of the circumstances test). The District Court may have concluded, incorrectly in my view, that despite a promise by Sergeant Carter, under the "totality of the circumstances" test Coombs' confession was still voluntary.

[¶ 21] Sergeant Carter's destruction of evidence immediately after obtaining Coombs' confession, in the absence of any rational explanation for his action, is suffi-cient to compel a reasonable doubt as to the voluntariness of Coombs' confession. I would therefore vacate the conviction.

---

5. Maine law makes criminal the destruction of physical evidence that might aid in the discovery, apprehension, or conviction of a person accused of a crime. *See* 17–A M.R.S.A. § 753(1)(C) (1983) (Hindering apprehension or prosecution). The Court correctly notes that possession of a usable amount of marijuana is a civil offense in Maine. *See supra* note 3. It is not clear from the record how much marijuana Sergeant Carter disposed of, however. Although he testified that he found a "very small quantity of marijuana," Coombs recalled that there "was quite a large amount" of marijuana, "probably . . . half of a sandwich bag full." Possession of more than one and a quarter ounces of marijuana gives rise to a presumption of guilt of the crime of unlawfully furnishing scheduled drugs. 17–A M.R.S.A. § 1106(3)(A) (Supp.1997). In any event, Ser-geant Carter's unauthorized and highly irregular act of destroying evidence of either a civil or criminal offense raises serious doubts about the circumstances surrounding Coombs' confession.

6. The court also did not believe Sergeant Carter in all respects. For example, Sergeant Carter testified that after arriving at the store he approached Coombs' car, tapped on the window, and asked the occupants to step out of the car and show identification. Coombs, on the other hand, did not recall Sergeant Carter tapping on the window and testified that he "opened up the doors and physically removed us from the car." The court explicitly rejected Sergeant Carter's version of the facts, finding that "Carter hauled the two suspects . . . out of the car."