RECEIVED AND FILED
KENNEBEC SUPERIOR CC

STATE OF MAINE

KENNEBEC, ss.

STATE OF MAINE

v.

STEPHEN BERO,

    Defendant

SUPERIOR COURT
CRIMINAL ACTION
DOCKET NO. CR-03-144

SEP 2 6 2003

NANCY DESJARDIN
CLERK OF COURTS

URA - KEN - 9/26/2003

DECISION AND ORDER

DONALD L. GARBRECHT
LAW LIBRARY

OCT 7 2003

Pending before the court is the defendant's motion to suppress which seeks to exclude as evidence statements the defendant apparently made to his wife and stepdaughter, the alleged victim in this case.

The motion to suppress articulates the customary bases for exclusion of evidence, namely that the defendant made statements to police officers without having first been advised of his *Miranda* warnings or that his statements were made involuntarily. The motion also expresses a third ground to suppress which is based on the defendant's claim that a State Police Detective, Adam Kelly, had arranged for the defendant's wife and stepdaughter to make pretextual phone calls to the defendant during which he, apparently, made inculpatory statements. The defendant complains that these pretextual calls were arranged by Detective Kelly after the defendant had asserted his right not to make a statement and his attorney had told the detective that his client would make no statements.

Because this last contention is at the heart of the defendant's grievance, the parties have entered into the following stipulation:

On January 3, 2003, Detective Kelly called the defendant at his attorney's office. During this telephone conversation, the defendant said he would not make himself available for an interview. On this same occasion, the defendant's attorney told Kelly

that the defendant would not be making a statement. The parties agree that at this time no charges were pending, the defendant was not in custody, and he had not been provided with the *Miranda* warnings.

The parties have further stipulated that on January 7, 2003, Nikki Bero, age 14, the defendant's stepdaughter and alleged victim, called the defendant at Detective Kelly's request for the purpose of engaging him in a conversation which might yield inculpatory statements. To that end, Detective Kelly was present during the call and prompted Nikki with written suggestions as to the questions or statements she should pose to her stepfather.

On January 17, 2003, Detective Kelly arranged for a similar situation to occur by having the defendant's wife, Dina, call the defendant and engage him in conversation about his alleged sexual abuse of Nikki. Again, Detective Kelly was present and gave Dina questions to pose to her husband.

On neither occasion was the defendant told of Detective Kelly's role in making these telephone calls, his presence during them, or the purpose of the calls which was to solicit incriminating statements. Both conversations were taped. It is the contents of these statements which the defendant seeks to suppress.

The defendant, through counsel, has recognized that his request to suppress his statements cannot rest on a violation of *Miranda* principles. That is because the defendant was not in custody when he was interrogated by his wife and stepdaughter. *State v. Bleyl, et al.*, 435 A.2d 1349, 1357, n.5 (Me. 1981)("A defendant must be both under interrogation *and* in custody for *Miranda* warnings to be requisite") (emphasis supplied).

The defendant also agrees that at the time of the phone calls with his wife and stepdaughter, he had not been formally charged so that his right to have counsel assist

2

him had not "attached." Thus, this "interrogation," while police-influenced, did not entail an occasion in the criminal process for which the defendant had the right to legal counsel as guaranteed by the Sixth Amendment to the Constitution. "The right to counsel attaches 'at or after the initiation of adversary judicial criminal proceedings – whether by way of formal charge, preliminary hearing, indictment, information or arraignment.'" *State v. Shackelford*, 634 A.2d 1292, 1295 (Me. 1993) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 L.Ed.2d 411, 92 S.Ct. 1877 (1972)).

He apparently also agrees that there is no factual basis to support a claim that his statements were involuntarily given as there is no evidence of compulsion or coercive police conduct that would render his statements inadmissible as violative of his Fifth Amendment privilege against self-incrimination. "A confession is voluntary if it results from the free choice of a rational mind, if it is not the product of coercive police conduct, and if under all the circumstances its admission would be fundamentally fair." *State v. Coombs*, 1998 ME 2, ¶ 10, 704 A.2d 387, 390 (quoting *State v. Mikulewicz*, 462 A.2d 497, 501 (Me. 1983)).

Perhaps recognizing that these traditional bases to suppress a statement do not apply, defendant's counsel, in a letter asking the court for an evidentiary hearing on the pending motion, also requested the court:

> exercise its supervisory powers and suppress the statements made by the Defendant because of the outrageous conduct by Trooper Kelly in willfully and deliberately questioning, through a third party, a defendant who has specifically asserted his right to counsel.

While not so articulated, the court understands that the defendant's claim of outrageous behavior by the police is, in essence, a demand that his statements be suppressed on due process grounds. In support of this contention, he urges this court apply a higher standard than that which may be found in federal jurisprudence. Our

3

Law Court, however, has held that, "the Maine Constitution and the Constitution of the United States are declarative of identical concepts of due process." *Penobscot Area Housing Dev. Corp. v. City of Brewer*, 434 A.2d 14, 24, n.9 (Me. 1981). *See also State v. Cote*, 1999 ME 123, ¶ 11, n.6, 736 A.2d 262, 265 n.6. In this regard, if federal precedent were interchangeable with our own, suppression would not be available as a remedy for outrageous governmental misconduct which leads to a confession. *United States v. Bouchard*, 886 F.Supp. 111, 121 (D.Me. 1995).

Nevertheless, in the case of *State v. McConkie*, 2000 ME 158, ¶¶9-11, 755 A.2d 1075, 1078-79, the Law Court held that a statement not obtained "within the bounds of fair play" may be suppressed as a violation of due process. In that case, a police detective interrogated the defendant in a noncustodial situation, but affirmatively misled him as to his rights, telling him that any information he gave the detective would "stay confidential." *Id.*, ¶ 4, 755 A.2d at 1077. This misadvice yielded a confession which not only contravened the express purposes of the *Miranda* warning, it affected the voluntariness of the statement which was provided as the result of a promise of confidentiality which would not be kept.

Thus, this court understands that the defendant seeks suppression of his statements to his wife and stepdaughter because they were obtained in a manner which "offends the community's sense of justice, decency and fair play." *State v. McConkie, id.*, ¶ 9; 755 A.2d at 1078. More specifically, the question here is whether Detective Kelly's successful use of family members to solicit inculpatory statements, after he had been told by the defendant and his attorney that he wished not to be interviewed, was sufficiently outrageous that the court ought to find that this strategy violated notions of governmental fair play and therefore suppress those statements as violative of the defendant's due process rights.

4

While the court does not endorse or approve of Detective Kelly's circumvention of the defendant's official, expressed wishes not to be interviewed, several observations about the circumstances of this case yield the conclusion that it ought not result in a suppression order. First, as noted, *supra*, Detective Kelly's strategy entailed neither a custodial interrogation nor coercive police conduct. It also did not affirmatively mislead the defendant about his rights – the police misbehavior that resulted in suppression in *McConkie, id.*

Instead, it appears that the defendant was neither bullied, tricked nor coerced into speaking with his family members or responding to their questions about his alleged criminal conduct. Indeed, shortly before the telephone calls occurred, the defendant had consulted with counsel and, it may be inferred, understood the perils of talking about his alleged crimes. While the advice he received may have been limited to conversations with the police, there is no reason to believe that the defendant, or one in his position, might reasonably have understood that he could confess to family members without risk that his statements might ultimately be used against him. The issue then is what police conduct might have *caused* the defendant to incriminate himself, not simply the propriety of Detective Kelly's strategy.

Viewed in this way, it is plain that Detective Kelly's maneuvers did not cause the defendant to confess; the device used here was that the defendant would not know that the questions posed to him were police influenced or that the calls were being recorded. Had he known this, he would say, he would not have talked about his alleged crimes. Nevertheless, it must also be concluded that this deception did not induce the defendant to inculpate himself; it simply set a stage in which it was hoped he would. Once that circumstance was created, albeit by a concealed police stratagem, the

5

defendant's choice to speak, and the content of his statements, were freely made and influenced in no way by police conduct.

Were the court to order suppression of the defendant's statements here, it would have to conclude that when a defendant makes a noncustodial, voluntary statement without the right to and presence of counsel, such a statement may nevertheless amount to a violation of his due process rights if the police obtain that statement by circumventing the defendant's desire not to be interviewed. While such a request ought to be honored, its violation does not yet result in our jurisprudence in suppression because, as noted *supra*, the defendant had no right to counsel when he was interviewed. Thus, in the end, Detective Kelly's maneuver must be seen for what it was – an effort to circumvent a right the defendant did not possess, namely the right not to be interviewed before the criminal process had commenced. Accordingly, even though deceptions were used for this purpose, as there was no trespass on any of the defendant's identifiable rights, it also follows that the police conduct, while not here approved, did not offend "the community's sense of justice, decency and fair play," *State v. McConkie, id.,* ¶ 9, 755 A.2d at 1078, so that the defendant would be deprived of due process by the admission of his alleged confession into evidence.

Based on the foregoing, the clerk, is to make the following entry:

Motion to Suppress is DENIED.

So ordered.

Dated: September 25, 2003

John R. Atwood
Justice, Superior Court

6

STATE OF MAINE
  vs
STEPHEN BERO
60 OLD LEWISTON ROAD
NORTH MONMOUTH ME 04265

DOB: 10/22/1971
Attorney: WALTER MCKEE
        LIPMAN & KATZ PA
        227 WATER STREET
        PO BOX 1051
        AUGUSTA ME 04332-1051
        RETAINED 04/18/2003

Filing Document: INDICTMENT
Filing Date: 04/18/2003

## DOCKET RECORD

State's Attorney: EVERT FOWLE

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)         Class A          05/17/1997 MONMOUTH

2   UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(C)         Class C          05/17/1997 MONMOUTH

3   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)         Class A          05/17/1998 MONMOUTH

4   UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(C)          Class C          05/17/1998 MONMOUTH

5   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)         Class A          05/17/1999 MONMOUTH

6   UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(C)          Class C          05/17/1999 MONMOUTH

7   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)         Class A          05/17/2000 MONMOUTH

8   UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(C)          Class C          05/17/2000 MONMOUTH

9   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)         Class A          05/17/2001 MONMOUTH

10  UNLAWFUL SEXUAL CONTACT                   05/17/2001 MONMOUTH

Printed on: 09/26/2003

# Docket Events:

04/18/2003 FILING DOCUMENT - INDICTMENT FILED ON 04/18/2003

       TRANSFER - BAIL AND PLEADING GRANTED ON 04/18/2003

       TRANSFER - BAIL AND PLEADING REQUESTED ON 04/18/2003

04/18/2003 Charge(s): 1,2,3,4,5
       HEARING - ARRAIGNMENT SCHEDULED FOR 04/25/2003 @ 9:00

       NOTICE TO PARTIES/COUNSEL
04/18/2003 BAIL BOND - $20,000.00 SURETY BAIL BOND SET BY COURT ON 04/18/2003

       OR $2,000 CASH
04/18/2003 WARRANT - ON COMP/INDICTMENT REQUESTED ON 04/18/2003

04/18/2003 WARRANT - ON COMP/INDICTMENT ORDERED ON 04/18/2003

04/18/2003 WARRANT - ON COMP/INDICTMENT ISSUED ON 04/18/2003

       CERTIFIED COPY TO WARRANT REPOSITORY
04/22/2003 BAIL BOND - $2,000.00 CASH BAIL BOND FILED ON 04/22/2003

       Bail Receipt Type: CR
       Bail Amt: $2,000

       Date Bailed: 04/19/2003       Receipt Type: CK
                              Prvdr Name: STEPHEN BERO
                              Rtrn Name: ELIZABETH BERO

## Conditions of Bail:
04/23/2003 WARRANT - ON COMP/INDICTMENT EXECUTED ON 04/19/2003

       ARRESTED BY MONMOUTH P.D.
04/23/2003 WARRANT - ON COMP/INDICTMENT RETURNED ON 04/23/2003

04/23/2003 Charge(s): 1,2,3,4,5
       HEARING - ARRAIGNMENT CONTINUED ON 04/22/2003

       DEFENSE ATTORNEY CALLED AND SAID HE WAS UNABLE TO APPEAR ON 4/25. ARRAIGNMENT RESCHEDULED
       FOR 4/24/03 AT 8:30
04/23/2003 Charge(s): 1,2,3,4,5,6,7,8,9,10
       HEARING - ARRAIGNMENT SCHEDULED FOR 04/24/2003 @ 8:30

04/25/2003 Charge(s): 1,2,3,4,5,6,7,8,9,10
       HEARING - ARRAIGNMENT HELD ON 04/24/2003
       DONALD H MARDEN , JUSTICE
       Attorney: WALTER MCKEE

DA: QUINN KELLEY          Reporter: JANETTE COOK
READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO DEFENDANT. 21 DAYS TO FILE MOTIONS

04/25/2003 BAIL BOND - $2,000.00 CASH BAIL BOND CONTINUED AS POSTED ON 04/24/2003

NO CONTACT WITH NIKKI BERO OR DINA BERO
04/30/2003 Charge(s): 1,2,3,4,5,6,7,8,9,10
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 04/24/2003

04/30/2003 Charge(s): 1,2,3,4,5,6,7,8,9,10
PLEA - NOT GUILTY ACCEPTED BY COURT ON 04/24/2003

05/13/2003 MOTION - MOTION FOR DISCOVERY FILED BY DEFENDANT ON 05/13/2003

05/13/2003 MOTION - MOTION TO SUPPRESS FILED BY DEFENDANT ON 05/13/2003

05/20/2003 HEARING - MOTION TO SUPPRESS SCHEDULED FOR 06/03/2003 @ 9:00

NOTICE TO PARTIES/COUNSEL
05/20/2003 HEARING - MOTION FOR DISCOVERY SCHEDULED FOR 06/03/2003 @ 9:00

NOTICE TO PARTIES/COUNSEL
06/20/2003 HEARING - CONFERENCE SCHEDULED FOR 06/26/2003 @ 8:15

NOTICE TO PARTIES/COUNSEL
09/26/2003 HEARING - MOTION FOR DISCOVERY HELD ON 06/03/2003
JOHN R ATWOOD , JUSTICE
Attorney: WALTER MCKEE
DA: PAUL RUCHA          Reporter: LAURIE GOULD
Defendant Present in Court
09/26/2003 HEARING - MOTION TO SUPPRESS HELD ON 06/03/2003
JOHN R ATWOOD , JUSTICE
Attorney: WALTER MCKEE
DA: PAUL RUCHA          Reporter: LAURIE GOULD
Defendant Present in Court
09/26/2003 MOTION - MOTION FOR DISCOVERY GRANTED ON 06/03/2003
JOHN R ATWOOD , JUSTICE
COPY TO PARTIES/COUNSEL
09/26/2003 MOTION - MOTION TO SUPPRESS DENIED ON 09/25/2003
JOHN R ATWOOD , JUSTICE
COPY TO PARTIES/COUNSEL

A TRUE COPY
ATTEST: _____
                Clerk