STATE OF MAINE                          Unified Criminal Court
KENNEBEC, ss                            Location: Augusta
                                        Dkt. No. KenCD-CR-17-20255


State of Maine

                                        Order on Defendant's Motion for
v.                                      Reconsideration and Further Findings of Fact
                                        Dated April 1, 2019
Calvin J. Goodhue


A hearing was held on March 21, 2019 on Defendant's Motion to Suppress, dated February 16, 2018. Defendant argued that the State had not established that his client consented to a blood draw. The State asserted that Defendant had consented to a blood draw both verbally and in writing, so there was no need to obtain a search warrant. The State waived the argument of exigent circumstances.

The court ruled that the State established by a preponderance of the evidence that Defendant had consented to a blood draw. Defendant Calvin J. Goodhue, through counsel, asks this court to reconsider and make further findings related to its order denying Defendant's motion to suppress. Defendant asks for an analysis of voluntariness of his consent to take a blood test.

In *State v. Dodge*, 2011 ME 47 ¶ 11 and 12, 17 A.3d at 128, the Law Court stated:

> If a criminal defendant challenges the voluntariness of a confession, a court must determine if the confession resulted from the "free choice of a rational mind," was "not a product of coercive police conduct," and "if under all of the circumstances its admission would be fundamentally fair." Mikulewicz, 462 A.2d at 501; *see State v. Poblete*, 2010 ME 37, ¶24, 993 A.3d 1104, 1109-10; *State v. Coombs*, 1998 ME 1, ¶10, 704 A.2d 387, 390-91. This assessment of voluntariness is based on the totality of the circumstances, and includes both external and internal factors, such as: the details of the interrogation; duration of the interrogation; location of the interrogation; whether the interrogation was custodial; the recitation

of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct. *State v. Sawyer*, 2001 ME 88, ¶9, 772 A.2d 1173, 1176. For instance, statements made in response to threats, *see Coombs*, 1998 ME 1, ¶12, 704 A.2d at 391, or in response to police promises of leniency, *see State v. McCarthy*, 2003 ME 40, ¶¶12-13, 819 A.2d 335, 340, may be determined to be involuntary.

Based all the evidence presented at the hearing on the Motion to Suppress, this court finds as follows:

## FACTS:

Officer Ryan Dinsmore of Waterville Police Department testified at the hearing on the Motion to Suppress. Officer Dinsmore is a graduate of the Maine Criminal Justice Academy and has had twelve years of experience in law enforcement. Officer Dinsmore was the only witness called to testify at the hearing on the Motion to Suppress. The court found his testimony credible.

Defendant was not present during the hearing.

At approximately 1 a.m. on January 11, 2017, Officer Dinsmore was dispatched to the scene of an accident in Waterville where a truck had reportedly rolled over into a snow bank. When he arrived at the scene of the accident, the Officer saw Defendant Calvin J. Goodhue walking around staggering. Ambulance personnel were asking Defendant about his injuries and Officer Dinsmore overheard the Defendant admit to the EMT's that Defendant was the operator of the vehicle and that he had consumed approximately 12 beers.

The Officer observed that Defendant's eyes were glassy and watery and there was an odor of alcohol on his breath. Defendant had a gash on his head and some other small superficial cuts on his hands and face. Despite his injuries, Defendant was responsive and answered all the EMT's questions appropriately. The Officer had probable cause to believe Defendant had been operating a motor vehicle while under the influence of alcohol.

Defendant was taken to Thayer Hospital by the EMT's. Officer Dinsmore followed the ambulance to the hospital and arrived at the same time as the ambulance. The Officer entered the hospital with the ambulance personnel and the Defendant.

At the hospital, Defendant was taken to a room in the emergency area and Officer Dinsmore was permitted by the hospital staff to be present and have a conversation with Defendant. Officer Dinsmore was the only Officer present at the hospital.

The hospital personnel worked on Defendant's cuts while the Officer was in the room. During treatment, the Defendant was conscious. The Officer did not see any medical personnel put staples in Defendant's cuts.

While he was in Defendant's room, the Officer learned that other passengers in Defendant's vehicle were unaccounted for. He wanted to know if these people were safe as the accident was near the river. The Officer asked Defendant if there were other occupants in the vehicle. Defendant responded that there were two males in the vehicle whom he did not know. These two men had been acquaintances of the women in the vehicle.

While Defendant was impaired by alcohol, Defendant responded appropriately to the Officer's questions. The Officer could understand Defendant's responses.

After the medical personnel finished their initial care of Defendant, Officer Dinsmore told Defendant that he believed Defendant was operating a motor vehicle under the influence this evening. He asked Defendant to take a blood test. Defendant knew he had a right to refuse and in fact told Officer Dinsmore he did not want to participate in the test.

Officer Dinsmore then told Defendant because you refused the test, I have to read you a couple of paragraphs from a form. The blood test kit was in the room with the Officer and

Defendant. Attached to the kit was the implied consent form i.e. State's Exhibit 1.[1] In accordance with 29-A M.R.S. § 2521, Officer Dinsmore read the Department of the Secretary of State Bureau of Motor Vehicles Implied Consent form to Defendant. (*See* State's Exhibit 1.) The Officer read the form to Defendant "verbatim." The Officer did not add any explanation or other conversation.

After the Officer read State's Exhibit 1 explaining the possible consequences of refusing to take the test, Officer Dinsmore asked Defendant if the Defendant was still refusing to take the blood test. The Officer remembered that what he said to Defendant after refreshing his recollection from his report. In response, Defendant verbally agreed to take the blood test.

This interaction between Defendant and the Officer is two years old. The Officer does not remember the exact words Defendant used when Defendant verbally agreed to take the test. Officer Dinsmore heard Defendant consent verbally in response to his (the Officer's) question whether the Defendant was still refusing to take the test. However, in addition to agreeing verbally to take the test, Defendant signed a consent form agreeing to a blood test. Immediately above Defendant's signature are the words: "Let my signature state I have given consent for these blood samples to be taken." (*See* State's Exhibit 2.) The Officer watched Defendant sign the consent form i.e. State's Exhibit 2.

This court's assessment of voluntariness is based on the totality of the circumstances, and includes both external and internal factors. The questioning was low key and very brief. It took place in a hospital with hospital personnel present. Only one officer was present. Defendant was not in custody and a *Miranda* warning was not given. The Defendant had been in an accident and the Officer observed signs of intoxication, but Defendant was responsive and answered all

---

[1] *State v Lemeunier-Fitzgerald* 2018 ME 85, 188 A3d was decided after the Goodhue case being decided here. The Waterville Police Department no longer attaches implied consent forms to its blood test kits.

questions appropriately. There was no coercion, no tricks and no promises of leniency by the Officer.

After Defendant gave his written consent, five minutes elapsed before his blood was drawn - enough time for Defendant to reconsider and revoke his consent if he chose. (*See* State's Exhibit 2 for information on times.) Defendant did not change his mind after he agreed to take the blood test. The Officer remained in the Defendant's room in the hospital emergency area while Defendant's blood was drawn. The facts presented are sufficient to satisfy this court that Defendant voluntarily consented to have a blood test.

## CONCLUSION:

This warrantless search in the form of a blood test was freely and voluntarily consented to by Defendant. The State has proved by a preponderance of the evidence that Defendant consented to the blood test both by his words and by signing State's Exhibit 2.

Here, the context in which Defendant consented is in evidence and is one factor that distinguishes this case from the District and Superior Court decisions Defendant's counsel submitted to the court. Another factor that distinguishes this case is that Defendant Goodhue knew he could refuse when he consented to have his blood drawn.

The State has further proved by a preponderance of the evidence that Defendant's consent was voluntary.[2] It was the free choice of a rational mind and not the product of coercion, promises threats, trickery or any other inducements.

---

[2] *State v. Heald*, 314 A.2d 820, 829 (Me. 1973) (finding that when establishing voluntariness under the Fourth Amendment, "the State must prove by the fair preponderance of the evidence the underlying facts supporting the ultimate conclusion that there was probable cause to arrest or conduct a warrantless search.")

Defendant made a choice between refusing the test and facing the consequences and taking the test and facing the consequences. The court finds that Defendant did not acquiesce after hearing the informed consent. Rather, he made an informed choice between two outcomes, neither of which was appealing. Under all the circumstances the admission of the consent is fundamentally fair. *State v LeMeunier-Fitzgerald,* 2018 ME 85, 188 A.3d 183.

The court grants Defendant's request for additional findings. Defendant's Motion to Reconsider is denied.

Based on all the evidence, including the findings recited above and those made on the record at the conclusion of the hearing, the Motion to Suppress is denied.

Dated: April 1, 2019

Rae Ann French
Judge, Active Retired

**Entered on the docket** 4/1/19