2000 ME 158

**STATE of Maine**

v.

**Michael S. McCONKIE.**

Supreme Judicial Court of Maine.

Submitted on Briefs March 29, 2000.
Decided Aug. 11, 2000.

---

Geoffrey A. Rushlau, D.A., Leane M. Zainea, D.D.A., Belfast, for the State.

Christopher K. MacLean, MacLean & MacLean, Camden, for the defendant.

Panel: WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶1] Michael S. McConkie appeals from the judgment entered in the Superior Court (Waldo County, *Hjelm, J.*) following a jury verdict finding him guilty of engaging in unlawful sexual conduct in violation of 17–A M.R.S.A. § 255 (1997).[1] McConkie

---

1. Section 255 provides in pertinent part as follows:

1. A person is guilty of unlawful sexual conduct if the person intentionally sub-

contends that the admission at trial of statements he made to a law enforcement officer constituted error. We agree and vacate the judgment.

[¶2] On June 23, 1998, McConkie went to the Fairfield Police Department to meet with Detective Scott Nichols of the Maine State Police to discuss allegations by a teenage boy that McConkie had had sexual contact with him. McConkie had voluntarily agreed to the meeting with Detective Nichols because he wanted to "find out what was going on."

[¶3] The interview took place in the police chief's office and the door was left ajar. During the interview, Detective Nichols made several statements that were aimed at convincing McConkie to reveal details about his relationship with the boy. At one point, Detective Nichols commented that the allegations made by the boy were really not such a big deal, just some mutual groping between the two. Shortly thereafter, Detective Nichols indicated that he was just trying to learn the truth about McConkie's relationship with the victim and that regardless of what McConkie said during the interview, "[McConkie was] going to go back home [that day] and that [was] going to be it."

[¶4] Further along in the course of the interview, Detective Nichols stated that he did not think McConkie was a bad person, but he had definitely made some poor choices with respect to young boys in the past. After a brief discourse regarding the mistakes people make, Detective Nichols told McConkie that any information he provided during the interview would "stay[] confidential." Following this statement, McConkie did in fact become much more open with respect to recounting the relationship he had had with the boy, making several incriminating statements.

[¶5] Prior to trial, McConkie filed a motion to suppress the statements he had made to Detective Nichols because Detective Nichols had misrepresented to him that whatever he said during the meeting would remain confidential and therefore not be used against him later. After a hearing, the Superior Court (Waldo County, *Marsano, J.*) denied the motion.

■ [¶6] Following a jury trial, McConkie was convicted of unlawful sexual conduct. On appeal, McConkie contends the statements he made to Detective Nichols should have been suppressed because Detective Nichols deceived him as to his Fifth Amendment privilege against self-incrimination,[2] thereby making the admission at trial of the statements fundamentally unfair. Accordingly, he asks this Court to consider the admissibility of the statements he made to Detective Nichols during their meeting.

■ [¶7] McConkie concedes that his meeting with Detective Nichols did not constitute a custodial interrogation and that Detective Nichols was therefore not required to warn him of his *Miranda* rights before questioning him as to his relationship with the boy. *See Miranda v. Arizona,* 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *State v. Michaud,* 1998 ME 251, ¶ 3, 724 A.2d 1222, 1226 (quoting *State v. Swett,* 1998 ME 76, ¶ 4, 709 A.2d 729, 730). *Miranda* requires that an individual subject to a custodial interrogation be warned,

jects another person to any sexual contact, and:

....

    C. The other person, not the actor's spouse, has not in fact attained the age of 14 years and the actor is at least 3 years older;

....

2. Unlawful sexual conduct is a Class D crime, except that ... a violation of

subsection 1, paragraph C ... is a Class C crime.

2. The Fifth Amendment provides that "no person ... shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Similarly, the Maine Constitution provides that "[i]n all criminal prosecutions, the accused ... shall not be compelled to furnish or give evidence against himself." Me. Const. art. I, § 6.

prior to any questioning that he has the right to remain silent, *that anything he says can be used against him in a court of law,* that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Miranda,* 384 U.S. at 479, 86 S.Ct. 1602 (emphasis added).

[¶8] What McConkie complains of is that, although Detective Nichols was not obligated to warn him that anything he said could be used against him in a court of law, Detective Nichols violated his due process rights when he affirmatively misled him to believe that the exact opposite was true, i.e., that the information he provided would not be used against him because it would remain confidential.

[¶9] "The Due Process Clause of the Constitution prohibits deprivations of life, liberty, or property without 'fundamental fairness' through governmental conduct that offends the community's sense of justice, decency and fair play." *State v. Stade,* 683 A.2d 164, 166 (Me.1996) (quoting *Roberts v. Maine,* 48 F.3d 1287, 1291 (1st Cir.1995)).[3] A fundamental con-

cept of due process of law is that an accused's confession must be voluntary if it is to be admitted at trial. *See State v. Mikulewicz,* 462 A.2d, 497, 500 (Me.1983). "A confession is voluntary if it results from the free choice of a rational mind, if it is not a product of coercive police conduct, and if under all of the circumstances its admission would be fundamentally fair." *Id.* at 501.

[¶10] Applying this standard in the present case,[4] it is evident that McConkie's statements to Detective Nichols were obtained through the use of an interrogation tactic that does not fall within the bounds of fair play and that the admission of those statements at trial therefore violated McConkie's right to due process of law pursuant to the Maine and the United States Constitution.[5] Detective Nichols, although not required to advise McConkie of his *Miranda* rights in the circumstances of the present case, was nonetheless not at liberty to affirmatively mislead McConkie as to his constitutionally protected right against self-incrimination.

[¶11] Although we view the totality of the circumstances in determining the voluntariness of a confession, *see Mikulewicz,*

3. While statements may be suppressed based on violations of both the Fifth and Fourteenth Amendments, "[w]here the Fifth Amendment analysis seeks to determine whether the defendant's confession was compelled, a due process analysis asks 'whether the State has obtained the confession in a manner that comports with due process.'" *State v. Rees,* 2000 ME 55, ¶ 36, 748 A.2d 976, 987 (*Saufley, J.* dissenting) (quoting *Miller v. Fenton,* 474 U.S. 104, 110, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). The focus in a due process analysis, "a focus that may provide broader protections than the Fifth Amendment, is not limited to the presence or absence of compulsion, but rather addresses the totality of the State's actions in obtaining the confession." *Id.*

4. In similar circumstances, this Court has also applied the test set forth by the United States Supreme Court in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), which applies the following three factors to the procedure in question to determine whether the procedure offends our concept of due process of law:

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and administrative burdens that the additional or substitute procedural requirement would entail.

*Stade,* 683 A.2d at 166 (citing *Mathews,* 424 U.S. at 335, 96 S.Ct. 893) (*Mathews* factors applied where evidence was obtained as a result of law enforcement officer misleading defendant as to the consequences of taking or failing to take a blood-alcohol test).

5. "This Court has long adhered to the principle that the Maine Constitution and the Constitution of the United States are declarative of identical concepts of due process." *Rees,* 2000 ME 55, ¶ 38, 748 A.2d at 987 (quoting *Penobscot Area Hous. Dev. Corp. v. City of Brewer,* 434 A.2d 14, 24 n. 9 (Me.1981)).

462 A.2d at 501, we cannot condone affirmative conduct by a state actor attempting to mislead a suspect regarding his constitutionally protected right to remain silent and the consequences of speaking. Thus we conclude that the admission at trial of the statements derived as a result of that conduct caused McConkie's trial to be fundamentally unfair.

The entry is:

Judgment of conviction vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.