STATE OF MAINE                                    SUPERIOR COURT
                                                  CRIMINAL ACTION
KENNEBEC, ss.          REC'D & FILED              DOCKET NO. CR-02-271
                       Nancy A. Desjardin

STATE OF MAINE            JUN 06 2003

      v.                Clerk of Courts           DECISION AND ORDER
                        Kennebec County
ROBERT ROBINSON, JR.,                             DONALD L. GARBRECHT
                                                  LAW LIBRARY
      Defendant
                                                  AUG 7 2003

    This matter is before the court on the defendant's motion to suppress statements

he gave to State Police Detective William Harwood on two occasions. The defendant

claims these statements were provided involuntarily and that their use as evidence at

trial would constitute a denial of due process. A testimonial hearing on the motion was

conducted over two days, the parties have submitted memoranda of law, and the

motion is in order for disposition.

    It is well established in Maine law that a statement which is voluntary and

therefore admissible in evidence is one that "results from the free choice of a rational

mind, if it is not a product of coercive police conduct, and if under all the circumstances

its admission would be fundamentally fair." *State v. Coombs*, 1998 ME 1, ¶ 10, 704 A.2d

387, 390-91 (quoting *State v. Mikulewicz*, 462 A.2d 497, 501 (Me. 1983)). It is the

prosecution's burden to establish voluntariness beyond a reasonable doubt. *State v.*

*McCarthy*, 2003 ME 40, ¶ 12, _____ A.2d _____.

    The defendant argues that there is a reasonable doubt as to the voluntariness of

his statements because, first, the police interrogation techniques used entailed egregious

misconduct involving intimidation and deception, and, second, the defendant's mental

condition was such that he could not properly appraise the nature and purpose of the

interrogation and exercise good judgment in such a stressful circumstance.

In assessing the merits of these arguments and whether the State has established voluntariness beyond a reasonable doubt, the court, as noted, must consider the totality of the circumstances in which the confession was obtained. *State v. Coombs, id.,* ¶ 7, 704 A.2d at 387. In carrying out this task, the court should consider both "external and internal factors such as: the details of the interrogation; duration of the interrogation; whether the interrogation was custodial; the recitation of *Miranda* warnings; the number of officers involved; the persistence of the officers; police trickery; threats, promises or inducements made to the defendant; and the defendant's age, physical and mental health, emotional stability, and conduct." *State v. Sawyer,* 2001 ME 88, ¶ 9, 772 A.2d 1173, 1176. Applying these factors and the "totality of the circumstances" test to the evidence adduced, the court concludes that the State has established beyond a reasonable doubt that the defendant's statements were voluntary so that they may be admitted in evidence. In this regard the court makes the findings which here follow.

The defendant, Robert Robinson (Robinson), with the encouragement of his mother and girlfriend, contacted Detective William Harwood (Harwood) of the State Police because he wanted to take a polygraph test to prove that he did not sexually molest his daughters. Harwood was the principal investigator in the case and knew Robinson from a variety of past interactions with him in motor vehicle cases and more serious matters, including a burglary investigation and a confrontation with the State Police Tactical Team.

Detective Harwood accommodated the defendant's request and a polygraph test was scheduled with Detective Michael Mitchell (Mitchell) of the State Police on August 7, 2002, at the State Police Crime Laboratory. The defendant arrived for the test with his mother and girlfriend who remained in a waiting area outside the polygraph room.

Inside the polygraph room, which appears in the videotape to be a small one,[1] Robinson met with Mitchell, the polygraph examiner. Early in their meeting, Mitchell told the defendant that the polygraph test would take two to three hours and advised him of his constitutional rights per *Miranda*. Robinson was also told he was not under arrest and could leave at any time. For the next hour and a half[2] Mitchell questioned Robinson about his personal background, his physical and mental health, medications he was taking, and other more general topics of conversation, including the mutual interests of the two men.

Mitchell and Robinson then took a break during which Robinson met with his girlfriend. When the session resumed, Mitchell began by explaining how a polygraph test works, told Robinson what one of the victims, Ashley Rideout, his stepdaughter, was claiming, and then began his questioning. During this interrogation, Mitchell, with Harwood's concurrence, emphasized that Ashley's complaint was that the defendant forced her to engage in sex[3] and that he ought to admit to a consensual act with the girl which was a less serious matter. To promote this approach Mitchell insisted that teenage girls exaggerate, that he did not believe that Robinson forced sexual intercourse, but that this girl would not retract her statement in the face of pressure from her mother, and that the police and the Department of Human Services will back up kids at trial who make allegations of sexual abuse. That being so, Mitchell reasoned, Robinson ought to admit to consensual sexual acts with Ashley to avoid being

---

[1] As part of the evidentiary hearing in this case, the videotape of the meeting between Robinson, Mitchell, and then Harwood, was entered as an exhibit. The court has reviewed the tape in its entirety.

[2] This statement of time is only a rough approximation as are any other references to time in this decision and order which concern this meeting on August 7, 2002.

[3] Apparently Ashley's claim was not that the defendant physically forced her to engage in sexual activity, but that she was compelled to accede to the defendant's sexual advances by fear because of his violent, threatening nature. At the hearing on this motion Detective Harwood testified that the defendant was not going to be charged with a forced sexual act. It is not known how the detective would have known this as charging decisions are usually the District Attorney's.

convicted of something more serious, i.e.., rape or forced sexual intercourse, which has a maximum sentence of 40 years. Such a thing could happen because, according to Mitchell, people get convicted of crimes they did not commit and telling him what happened might prevent that. Moreover, Mitchell implied, if Robinson did not tell him what happened and admit to what he did, he would be convicted.

This interrogation, which lasted approximately an hour, met with no success. Throughout the questioning, the defendant shook his head, accused Mitchell of wanting him to agree to something he did not do, repeatedly stating he would not admit to something he did not do. So, while this interrogation technique was unfair in that it wrongly suggested to Robinson that if he did not admit to consensual sexual intercourse, he would be convicted of a more serious allegation involving a forced sexual act, this approach, accompanied by the interrogator's close proximity to the defendant and other gestures to emphasize his points, did not yield a confession.

Further entreaties by Mitchell over the next hour also included the erroneous assertion that the age of consent is 13 and that because Ashley was 15 she could consent, implying that an admission to sexual intercourse with her was not criminal.[4] This, too, did not succeed in moving the defendant from his oft-stated position that he cannot agree to something he did not do. Indeed, Robinson told Mitchell that if he said he did not force himself on Ashley, he would be admitting he had sex with her which, he said, he did not do. Finally, Robinson told Mitchell that admitting to something he did not do would be a sin.

Ultimately, Robinson asked Mitchell if he agreed to something would he then be arrested and, next, told him he would agree to something but then wanted to take the

---

[4] Detective Mitchell corrected this misstatement of the law shortly after he made it, accurately telling the defendant he cannot have consensual sex with someone under 16.

test,[5] suggesting that if he agreed to something he did not do, the polygraph test would show that the confession was erroneous.

At this point Detective Harwood entered the room and told Robinson not to admit to something he did not do and not to say something that was not true. Mitchell then left the room. Thereafter, the defendant said that he did not want this kind of charge (sexual abuse of a child), that it would ruin his life and make it so he could not be around kids. Detective Harwood responded that he did not want Robinson charged with something he did not do – that he forced Ashley to have sex.

Shortly thereafter Robinson stated he would tell the truth and confessed that he had had sexual intercourse with Ashley, that she had "come on" to him after school, and gave details of their sexual encounters.

Thereafter Robinson asked to take a break to which Harwood agreed, but the two continued talking. During this last conversation, Robinson denied sexual activity with the other alleged victim, Katie, his daughter. He also denied events that Harwood had posed in test questions to be certain that the defendant was not admitting to acts, which did not occur.[6] Finally, Harwood asked the defendant why he admitted to the sexual acts with Ashley to which Robinson responded that he had told the truth because he could not bear it anymore, it was driving him crazy, that he was trying to get his life squared away, and that he was not making anything up.

The entire interview between the defendant and Detectives Mitchell and Harwood consumed approximately four and a half hours, of which approximately three and half hours involved interrogation.

---

[5] No polygraph test was ever taken, and the court finds, the defendant's protest to the contrary, that he knew there had been no test.

[6] For example, Harwood asked about events at a beach in New Hampshire which he knew had not occurred.

Two days later, Detective Harwood returned a telephone call from the defendant in which the defendant stated that he had given "you guys what you wanted to hear." Later in this call, however, he conceded that he had done wrong. Because the parties did not address the admissibility of this conversation at the hearing or in their memoranda, the court assumes that it is not claimed that this conversation was involuntary. Indeed, such a claim would be bound to fail as the defendant initiated this contact and the questions asked by Detective Harwood over the phone were primarily concerned with the defendant's wellbeing.

At the hearing on the motion, Dr. Brian Rines, a psychologist, testified that the defendant had had a severe brain injury as a teenager which would have a residual impact on his cognitive functioning, i.e., organizing information and acting on it. He also testified that the defendant had a low I.Q., a depressed intellectual score which may be unrelated to his head injury.[7] From this the doctor concluded that the defendant would have found it very difficult to deal with pressure situations such as Detective Mitchell's interrogation.

While all this testimony might create a reasonable doubt as to the voluntariness of the defendant's August 7 inculpatory statement, other evidence and testimony, when taken as a whole, suffice to meet the State's burden of proof. This evidence which the court finds persuasive on the pending issue is as follows:

- As noted, the defendant sought this interview with the police so that he could clear up the accusations against him.

- The interview was noncustodial. Although it occurred at a State Police building, the door to the interview room was unlocked, the defendant was told he could

---

[7] Dr. Rines also testified that the defendant was bipolar but that that condition would have no effect on the issue of the voluntariness of his confession.

leave at any time, two supportive people were nearby in a waiting room, one of whom he met with during a break in the interview, and, except for a few minutes, only one non-uniformed officer was with the defendant during this event.

- The defendant was advised of his *Miranda* warnings. Indeed, before this occurred, the defendant gave an acceptable layman's explanation of one's right to remain silent. Moreover, the explanation of the *Miranda* rights was detailed and beyond the usual recitation of those rights.

- The defendant had had ample experience with the police in the past, including Detective Harwood, and had given Harwood a statement in an unrelated case.

- The interview occurred in the daytime and there was no evidence that the defendant had been deprived of sleep or denied access to water, food or use of a bathroom.

- Despite the defendant's diminished intelligence, the videotape shows that he handled hypothetical questions, i.e., "what would you do if . . .?" in an appropriate manner. As well, he demonstrated a correct understanding of what "to his prejudice" means, i.e., something that would be used against him. Indeed, throughout the interrogation by Detective Mitchell, the defendant's answers to his questions were responsive to the topic at hand and expressed in an articulate way. Accordingly, the court finds that Dr. MacLean's assessment of the defendant's intelligence is the more probable one, that is that he has an I.Q. of approximately 80, although still a low score.

- Although Dr. Rines testified that the defendant would not do well under pressure and has a bad temper and difficulty controlling it, the videotape of the

7

interrogation shows no loss of control or any apparent inability by the defendant to cope with Detective Mitchell's persistent appeals to confess.

- Neither Detective Mitchell nor Detective Harwood berated, shouted at, insulted, or attempted to intimidate the defendant physically or emotionally.

- It is true that Detective Mitchell employed a number of interrogation techniques which could be characterized as "trickery," including an inaccurate description of Ashley's complaint, serious misstatements of the law, and, worst of all, an implication that if the defendant did not admit to consensual sexual relations with Ashley, he would be convicted of a more serious charge. None of these strategies worked. As noted, *infra*, the defendant appeared to be unaffected by Detective Mitchell's implorations, legitimate and not. He repeatedly shook his head, charged the detective with attempting to have him confess to something he did not do, stating that he would not do this, and would not be found guilty of something he did not do, although Mitchell told him that such things happened.

- While Detective Mitchell's entreaties were inappropriate, he and Detective Harwood also told the defendant on several occasions not to admit to something he did not do, and repeated that advice to the defendant at least twice before he confessed.

- Despite the opportunity to "save face" and emphasize that the sexual acts between he and the teenager were consensual, the defendant maintained his story throughout Mitchell's interrogation.

- Just before the defendant confessed, he stated, "This is going to ruin my life; it's going to make it so I can't be around kids."[8] Such a statement demonstrates that

---

[8] This is not a direct quotation from the videotape but, rather, from the court's notes from watching the tape as are other quotations in this decision and order.

the defendant understood the seriousness of what he was about to do and the consequences of giving a confession to sexual abuse of a young person.

- The defendant admitted to a crime involving Ashley, but not Katie. If his independent will had been overcome by the detectives, one would believe that he would have confessed to other criminal acts. Instead, the defendant resolutely refused to admit to any misdeeds with Katie or any of his other children.

In the end, the court finds that Detective Mitchell's investigative techniques and the defendant's mental condition, taken alone or together, did not overcome his free will and cause him to confess. Instead, the court concludes that the defendant confessed for the reasons he gave Detective Harwood, namely that he could not bear the burden of the matter any longer, that it was driving him crazy, and that he wanted to get his life squared way. As such, the court finds beyond a reasonable doubt that the defendant chose "freely and knowingly, to provide criminal self-condemnation by utterances from his own lips." *State v. Collins,* 297 A.2d 620, 626 (Me. 1972).

Consistent with this conclusion, the court also finds that the use of the defendant's confession at trial does not violate principles of due process as it was not obtained by "governmental conduct which offends the community's sense of justice, decency and fair play." *State v. McConkie,* 2000 ME 158, ¶ 9, 755 A.2d 1075, 1078. This is not to say that the court endorses or approves of Detective Mitchell's improper interrogation techniques, only that the confession was not the product of these methods.

For the reasons stated herein, the Amended Motion to Suppress Statements/Admissions and Confessions is DENIED.

So ordered.

Dated: June___6___, 2003

John R. Atwood
Justice, Superior Court

STATE OF MAINE

vs

ROBERT A ROBINSON, JR
354 HALLOWELL ROAD
CHELSEA ME 04330

DOB: 06/18/1968
Attorney: ANDREWS CAMPBELL
CAMPBELL LAW OFFICE
45 KALERS CORNER ROAD
WALDOBORO ME 04572
APPOINTED 08/26/2002

SUPERIOR COURT
KENNEBEC, ss.
Docket No  AUGSC-CR-2002-00271

**DOCKET RECORD**

State's Attorney: DAVID CROOK

Filing Document: INDICTMENT
Filing Date: 08/15/2002

Major Case Type: FELONY (CLASS A,B,C)

## Charge(s)

1   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)              Class A

03/29/2000 CHELSEA

2   UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(C)              Class C

03/29/2000 CHELSEA

3   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)              Class A

02/25/1998 CHELSEA

4   UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(C)              Class C

02/25/1998 CHELSEA

5   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)              Class A

02/25/1999 CHELSEA

6   UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(C)              Class C

02/25/1999 CHELSEA

7   GROSS SEXUAL ASSAULT
   17-A   253(1)(B)              Class A

02/25/2000 CHELSEA

8   UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(C)              Class C

02/25/2000 CHELSEA

9   GROSS SEXUAL ASSAULT
   17-A   253(2)(H)              Class B

02/25/2001 CHELSEA

10  UNLAWFUL SEXUAL CONTACT
   17-A   255(1)(G)              Class C

02/25/2001 CHELSEA

Printed on: 06/06/2003

## Docket Events:

08/15/2002 FILING DOCUMENT -  INDICTMENT FILED ON 08/15/2002

TRANSFER -  BAIL AND PLEADING GRANTED ON 08/15/2002

TRANSFER -  BAIL AND PLEADING REQUESTED ON 08/15/2002

08/15/2002 Charge(s):  1,2,3,4,5,6,7,8,9,10
HEARING -  ARRAIGNMENT SCHEDULED FOR 08/27/2002 @ 8:30

NOTICE TO PARTIES/COUNSEL
08/15/2002 BAIL BOND - $5,000.00 CASH BAIL BOND SET BY COURT ON 08/15/2002
S KIRK STUDSTRUP , JUSTICE
$5,000 CASH OR $50,000 SURETY.
08/15/2002 WARRANT -  ON COMP/INDICTMENT ISSUED ON 08/15/2002
S KIRK STUDSTRUP , JUSTICE
CERTIFIED COPY TO WARRANT REPOSITORY. $50,000 SURETY OR $5,000 CASH.
08/21/2002 WARRANT -  ON COMP/INDICTMENT EXECUTED ON 08/16/2002

ARRESTED BY MSP, TROOPER HOWARD
08/21/2002 WARRANT -  ON COMP/INDICTMENT RETURNED ON 08/19/2002

08/21/2002 BAIL BOND - $50,000.00 SURETY BAIL BOND FILED ON 08/19/2002

AMENDED TO ADD NO CONTACT WITH ASHLEY RIDEOUT, HAYDEN RIDEOUT AND PAM ROBINSON ON 8/28/02.

| | | |
|---|---|---|
| Bail Amt:  $50,000 | Surety Type: BAIL LIEN | Surety Value:  $50,000 |
| County: KENNEBEC | County Book ID: 7024 Book Page: 215 | |
| Date Bailed: 08/16/2002 | Prvdr Name: BARBARA   ROBINSON | |
| Lien Issued: 08/19/2002 | Rtrn Name: BARBARA   ROBINSON | |
| Lien Discharged: | | |

### Conditions of Bail:
Have no contact with...

1    KATIE   ROBINSON
2    ASHLEY   RIDEOUT
08/26/2002 MOTION -  MOTION FOR APPOINTMENT OF CNSL FILED BY DEFENDANT ON 08/23/2002

08/26/2002 MOTION -  MOTION FOR APPOINTMENT OF CNSL GRANTED ON 08/26/2002
S KIRK STUDSTRUP , JUSTICE
COPY TO PARTIES/COUNSEL, DEFENDANT WAS FOUND INDIGENT AND HE WAS APPOINTED ANDREWS
CAMPBELL
08/26/2002 ATTORNEY -  APPOINTED ORDERED ON 08/26/2002
S KIRK STUDSTRUP , JUSTICE
08/29/2002 Charge(s):  1,2,3,4,5,6,7,8,9,10
HEARING -  ARRAIGNMENT HELD ON 08/27/2002
S KIRK STUDSTRUP , JUSTICE
Attorney:  ANDREWS CAMPBELL
DA:  ALAN KELLEY            Reporter: JANETTE COOK

Defendant Present in Court

READING WAIVED. DEFENDANT INFORMED OF CHARGES. COPY OF INDICTMENT/INFORMATION GIVEN TO
DEFENDANT. THE DEFENSE REQUESTED 30 DAYS TO FILE MOTIONS AND THE JUDGE GRANTED IT.

08/29/2002 Charge(s): 1,2,3,4,5,6,7,8,9,10
PLEA - NOT GUILTY ENTERED BY DEFENDANT ON 08/27/2002


08/29/2002 Charge(s): 1,2,3,4,5,6,7,8,9,10
PLEA - NOT GUILTY ACCEPTED BY COURT ON 08/27/2002


09/19/2002 MOTION - MOTION FOR ENLARGEMENT OF TIME FILED BY DEFENDANT ON 09/19/2002

MOTION FOR ENLARGEMENT OF TIME TO FILE MOTIONS AND MEMORANDA, THE REASON FOR THIS MOTION
IS THAT THE PERIOD FOR FILING MOTIONS EXPIRES ON SEPTEMBER 30, 2002. DEFENDANT INTENDS TO
FILE A MOTION TO SUPPRESS STATEMENTS, CONFESSIONS AND ADMISSIONS BUT NEEDS FURTHER
INFORMATION TO COMPLY WITH RULE 11 WHICH IS NOT YET AVAILABLE.

09/19/2002 MOTION - MOTION TO SUPPRESS STATEMENT FILED BY DEFENDANT ON 09/19/2002

MOTION TO SUPPRESS STATEMENTS, CONFESSIONS AND ADMISSIONS. DEFENDANT MOVES TO SUPPRESS ALL
STATEMENTS AND ADMISSIONS ALLEGEDLY MADE BY HIM ON OR ABOUT 4/11/00 IN RESPECT TO PENDING
THEFT CHARGE.

09/19/2002 MOTION - MOTION TO PRODUCE DHS RECORD FILED BY DEFENDANT ON 09/19/2002

MOTION FOR PERMISSION TO SUBPOENA DISCOVERY AND OR PRODUCTION ORDER TO DEPARTMENT OF HUMAN
SERVICES (EX PARTE)

09/24/2002 MOTION - MOTION BILL OF PARTICULARS FILED BY DEFENDANT ON 09/23/2002


09/30/2002 MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 09/20/2002
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL, TIME TO FILE MOTIONS IS ENLARGED TO OCTOBER 15, 2002.

09/30/2002 MOTION - MOTION TO PRODUCE DHS RECORD GRANTED ON 09/20/2002
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL, CLIFFORD ORDER SENT TO DEPARTMENT OF HUMAN SERVICES.

09/30/2002 MOTION - MOTION TO SUPPRESS STATEMENT FILED BY DEFENDANT ON 09/25/2002

AMENDED MOTION TO SUPPRESS STATEMENTS, ADMISSIONS AND CONFESSIONS.

10/03/2002 MOTION - MOTION TO SUPPRESS STATEMENT FILED BY DEFENDANT ON 10/03/2002

MOTION TO SUPPRESS ALLEGED CONFESSION AND ADMISSIONS ON DUR PROCESS GROUNDS.

10/03/2002 MOTION - OTHER MOTION FILED BY DEFENDANT ON 10/03/2002

MOTION FOR FORENSIC EXAM, COUNSEL FOR DEFENDANT MOVES THAT A FORENSIC PHYSICAL EXAMINATION
OF KATIE ROBINSON'S GENITAL AND RECTAL AREA FOR SIGNS OF OLD TRAUMA SUCH AS SCARS OR
TEARS, DEFECTS IN MEMBRANE, ABNORMALITIES, RESIDUAL OR LEFTOVER OF PRIOR UNUSUAL
STRETCHING, BE CONDUCTED BY THE STATE OF MAINE.

10/09/2002 SUBPOENA - SUBPOENA TO PRODUCE EVIDENCE EXECUTED ON 10/02/2002

SUBPOENA SERVED ON CUSTODIAN OF RECORDS AT THE KENNEBEC VALLEY MENTAL HEALTH CLINIC SERVED
BY DEFENSE COUNSEL.

10/09/2002 SUBPOENA - SUBPOENA TO PRODUCE EVIDENCE RETURNED ON 10/09/2002


10/09/2002 SUBPOENA - SUBPOENA TO PRODUCE EVIDENCE EXECUTED ON 10/02/2002

SUBPOENA SERVED ON KEVIN CONCANNON, COMMISSIONER OF DEPARTMENT OF HUMAN SERVICES BY
DEFENSE COUNSEL.
10/09/2002 SUBPOENA -  SUBPOENA TO PRODUCE EVIDENCE RETURNED ON 10/09/2002


10/11/2002 MOTION -  MOTION TO QUASH SUBPOENA FILED BY THIRD PRTY ON 10/11/2002


OBJECTION TO SUBPOENA, MOTION FILED BY CHRISTOPHER L. MANN, ASS. ATTORNEY GGENERAL
10/15/2002 MOTION -  MOTION FOR MENTAL EXAMINATION GRANTED ON 10/11/2002
DONALD H MARDEN , JUSTICE
COPY SENT TO STATE FORENSIC SERVICE
10/16/2002 MOTION -  MOTION FOR PHYS & MENTAL EXAM FILED BY DEFENDANT ON 10/15/2002


AMENDED MOTION FOR FORENSIC EXAM, DEFENSE COUNSEL IS REQUESTING A PHYSICAL EXAM ONLY OF
ASHLEY RIDEOUT.
10/16/2002 SUBPOENA -  SUBPOENA TO PRODUCE EVIDENCE EXECUTED ON 10/15/2002


SUBPOENA SERVED BY DEFENSE UPON FAMILY PLANNING ASSOC.
10/16/2002 SUBPOENA -  SUBPOENA TO PRODUCE EVIDENCE RETURNED ON 10/15/2002


10/16/2002 MOTION -  MOTION TO QUASH SUBPOENA FILED BY THIRD PRTY ON 10/16/2002


MOTION OF FAMILY PLANNING ASSOCIATION OF MAINE TO QUASH SUBPOENA, WITH INCORPORATED
MEMORANDUM OF LAW.
10/18/2002 MOTION -  OTHER MOTION FILED BY DEFENDANT ON 10/17/2002


MOTION TO ISSUE SUBPOENAS FOR DHS, SCHOOL AND MEDICAL RECORDS AS A NON EX PARTE ORDER,
WHICH SEEMS MORE EFFICIENT AND HAVE COPIED THE AG AND STATE.
10/18/2002 LETTER -  FROM PARTY FILED ON 10/18/2002


LETTER FROM ANDREWS CAMPBELL STATING THAT HE IS IN RECEIPT OF BOTH MOTIONS TO QUASH, ONE
FROM FAMILY PLANNING AND ONE FROM DHS.  HE ANTICIPATES THAT THESE WILL BE HEARD AT THE
SAME TIME ON MOTION DAY WHICH IS ON DEC. 3, 2002.  IN RESPECT TO MOTIONS TO SUPPRESS,
THESE MAY TAKE SOME TIME AS IT WOULD INVOLVE PLAYING A 3 OR 4 HOUR TAPE.  IF THE COURT
WISHES TO SCHEDULE THESE SPECIALLY, OR TO HAVE THE TAPE AVAILABLE BEFORE HEARING FOR
VIEWING DURING A PERIOD WHEN SOMETHING CANCELS HE HAS NO OBJ.
10/29/2002 MOTION -  MOTION TO QUASH SUBPOENA FILED BY THIRD PRTY ON 10/28/2002


MOTION TO QUASH SUBPOENA FILED BY MAINE GENERAL MEDICAL CENTER
10/29/2002 OTHER FILING -  OTHER DOCUMENT FILED ON 10/28/2002


MEMORANDUM IN SUPPORT OF ISSUANCE OF SUBPOENAS FILED BY DEFENSE COUNSEL ANDREWS CAMPBELL.
10/30/2002 MOTION -  MOTION FOR MENTAL EXAMINATION FILED BY STATE ON 10/29/2002


REQUEST FOR PSYCHIATRIC EXAMINATION FILED BY STATE.  THE STATE REQUESTS THE COURT TO ORDER
THE DEFENDANT TO BE EXAMINED WITH REFERENCE TO THE ISSUES OF COMETENCY, CRIMINAL
RESPONSIBILITY, ABNORMAL CONDITION OF MIND, AND ANY OTHER ISSUE INVOLVING THE DEFENDANT'S
MENTAL OR EMOTIONAL CONDITIONS.
11/04/2002 OTHER FILING -  DHS RECORD FILED ON 11/04/2002


11/04/2002 OTHER FILING -  OTHER DOCUMENT FILED ON 11/04/2002


DEFENSE COUNSEL'S OPPOSITION TO STATE'S REQUEST FOR PSYCHIATRIC EXAMINATION OF DEFENDANT.
11/13/2002 HEARING -  MOTION FOR MENTAL EXAMINATION SCHEDULED FOR 12/03/2002

S KIRK STUDSTRUP , JUSTICE
NOTICE   TO PARTIES/COUNSEL
12/12/2002 HEARING -  MOTION FOR MENTAL EXAMINATION NOT HELD ON 12/03/2002

12/23/2002 HEARING -  OTHER MOTION SCHEDULED FOR 01/06/2003 @ 9:00

ALL PENDING MOTIONS
12/31/2002 MOTION -  MOTION TO QUASH SUBPOENA DISMISSED ON 12/06/2002

12/31/2002 MOTION -  MOTION TO QUASH SUBPOENA DISMISSED ON 12/06/2002

01/08/2003 MOTION -  MOTION FOR MENTAL EXAMINATION GRANTED ON 01/06/2003
DONALD H MARDEN , JUSTICE
COPY SENT TO STATE FORENSIC SERVICE
01/08/2003 MOTION -  MOTION FOR PHYS & MENTAL EXAM DENIED ON 01/07/2003
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
01/08/2003 HEARING -  OTHER MOTION HELD ON 01/07/2003
DONALD H MARDEN , JUSTICE
Attorney:  ANDREWS CAMPBELL
DA:  ALAN KELLEY          Reporter: JANETTE COOK
Defendant Present in Court

ALL PENDING MOTIONS
01/08/2003 MOTION -  OTHER MOTION DENIED ON 01/07/2003
DONALD H MARDEN , JUSTICE
MOTION TO ISSUE SUBPOENAS FOR DHS, SCHOOL AND MEDICAL RECORDS AS A NON EX PARTE ORDER,
WHICH SEEMS MORE EFFICIENT AND HAVE COPIED THE AG AND STATE.
01/08/2003 MOTION -  OTHER MOTION DENIED ON 01/06/2003
DONALD H MARDEN , JUSTICE
MOTION FOR FORENSIC EXAM, COUNSEL FOR DEFENDANT MOVES THAT A FORENSIC PHYSICAL EXAMINATION
OF KATIE ROBINSON'S GENITAL AND RECTAL AREA FOR SIGNS OF OLD TRAUMA SUCH AS SCARS OR
TEARS, DEFECTS IN MEMBRANE, ABNORMALITIES, RESIDUAL OR LEFTOVER OF PRIOR UNUSUAL
STRETCHING, BE CONDUCTED BY THE STATE OF MAINE.
01/08/2003 MOTION -  MOTION BILL OF PARTICULARS DENIED ON 01/06/2003
DONALD H MARDEN , JUSTICE
01/08/2003 MOTION -  MOTION TO QUASH SUBPOENA GRANTED ON 12/03/2002
S KIRK STUDSTRUP , JUSTICE
COPY TO PARTIES/COUNSEL
01/10/2003 MOTION -  OTHER MOTION FILED BY DEFENDANT ON 01/06/2003

MOTION FOR RULING EXCLUDING ANY CORROBORATING EXPERT TESTIMONY BY THE STATE REGARDING
PHYSICAL CONDITION OF VICTIMS.
01/10/2003 MOTION -  MOTION TO RECONSIDER FINDING FILED BY DEFENDANT ON 01/06/2003

MOTION FOR RECONSIDERATION OF ORDERS DENYING ISSUANCE OF SUBPOENAS OF 12/6/02
01/10/2003 NOTE -  OTHER CASE NOTE ENTERED ON 01/10/2003

THE COURT HAS EXAMINED RECORDS OF THE VICTIM AT ERSKINE ACADEMY IN CAMERA AND IS SATISFIED
THERE IS NO INFORMATION RELATING IN ANY WAY TO ISSUES IN THIS CASE.
01/15/2003 PSYCHIATRIC EXAM -  STAGE ONE EXAM ORDERED ON 01/15/2003

EVALUATION IS SCHEDULED FOR 1/23/03 AT 8:30 AM.

01/17/2003 MOTION - MOTION TO REVOKE BAIL FILED BY STATE ON 01/17/2003

02/14/2003 MOTION - MOTION FOR SPEEDY TRIAL FILED BY DEFENDANT ON 02/13/2003

Attorney: ANDREWS CAMPBELL
02/18/2003 PSYCHIATRIC EXAM - STAGE ONE REPORT FILED ON 02/14/2003

COPIES TO DA AND ANDREWS CAMPBELL, ESQ.
03/10/2003 BAIL BOND - NO BAIL ALLOWED SET BY COURT ON 03/07/2003
JOHN R ATWOOD , JUSTICE
04/08/2003 HEARING - MOTION TO SUPPRESS HELD ON 03/05/2003
JOHN R ATWOOD , JUSTICE
Attorney: ANDREWS CAMPBELL
DA: ALAN KELLEY          Reporter: PHILIP GALUCKI
Defendant Present in Court

STATE WITNESSES: WILLIAM HARWOOD, PAMELA ROBINSON, ROBBY ROBINSON, III, DEFENSE WITNESSES:
BRYAN RINES, SHANNON HALEY, ROBERT ROBINSON
04/08/2003 MOTION - MOTION TO SUPPRESS STATEMENT UNDER ADVISEMENT ON 03/07/2003
JOHN R ATWOOD , JUSTICE
04/08/2003 MOTION - MOTION TO RECONSIDER FINDING WITHDRAWN ON 03/05/2003

04/08/2003 MOTION - MOTION TO SUPPRESS STATEMENT UNDER ADVISEMENT ON 03/07/2003
JOHN R ATWOOD , JUSTICE
04/08/2003 OTHER FILING - MEMORANDUM OF LAW FILED ON 04/08/2003

MEMORANDUM FILED BY STATE
04/08/2003 MOTION - MOTION FOR ADDITIONAL FUNDS FILED BY DEFENDANT ON 04/08/2003

EX-PARTE MOTION FOR ADDITIONAL FUNDS TO COMPENSATE DR. RINES.
04/09/2003 TRIAL - DOCKET CALL SCHEDULED FOR 05/08/2003 @ 9:30

04/17/2003 OTHER FILING - OTHER DOCUMENT FILED ON 04/15/2003

Attorney: ANDREWS CAMPBELL
REPLY MEMO OF DEFENDANT
04/17/2003 CASE STATUS - CASE FILE LOCATION ON 04/15/2003

JUSTICE ATWOOD HAS THE FILE - UNDER ADVISMENT
04/30/2003 MOTION - MOTION TO CONTINUE FILED BY DEFENDANT ON 04/30/2003

05/01/2003 ORDER - TRANSCRIPT ORDER FILED ON 04/30/2003

COPY OF TRANSCRIPT ORDER SENT TO PHIL GALUCKI
05/07/2003 MOTION - MOTION TO CONTINUE GRANTED ON 05/07/2003
DONALD H MARDEN , JUSTICE
COPY TO PARTIES/COUNSEL
05/08/2003 MOTION - MOTION FOR ADDITIONAL FUNDS GRANTED ON 05/06/2003
JOHN R ATWOOD , JUSTICE
COPY TO PARTIES/COUNSEL     COPY OF ORDER FOR ADDITIONAL FUNDS AND ORIGINAL BILL FROM DR.
RINES SENT TO AOC FOR PAYMENT.  COPY OF ORDER SENT TO MR. CAMPBELL
05/14/2003 OTHER FILING - TRANSCRIPT FILED ON 05/14/2003

TRANSCRIPT OF MOTION TO SUPPRESS HEARING

05/21/2003 MOTION - MOTION FOR ADDITIONAL FUNDS FILED BY DEFENDANT ON 05/16/2003

REQUEST BY DEFENSE ATTORNEY FOR ADDITIONAL FUNDS TO COMPENSATE DR. FREEMAN. ORIGINAL
MOTION SENT TO JUSTICE ATWOOD IN KNOX COUNTY SUPERIOR COURT.

06/06/2003 TRIAL - DOCKET CALL HELD ON 05/08/2003
DONALD H MARDEN , JUSTICE
Attorney: ANDREWS CAMPBELL
DA: ALAN KELLEY          Reporter: LAURIE GOULD
Defendant Present in Court

06/06/2003 HEARING - MOTION TO REVOKE BAIL HELD ON 03/07/2003
JOHN R ATWOOD , JUSTICE
Attorney: ANDREWS CAMPBELL
DA: ALAN KELLEY
Defendant Present in Court

06/06/2003 MOTION - MOTION TO REVOKE BAIL GRANTED ON 03/07/2003
JOHN R ATWOOD , JUSTICE
COPY TO PARTIES/COUNSEL   SEE JUSTICE ATWOOD'S ORDER DATED 3/7/03

06/06/2003 MOTION - OTHER MOTION DENIED ON 03/05/2003
JOHN R ATWOOD , JUSTICE
MOTION FOR RULING EXCLUDING ANY CORROBORATING EXPERT TESTIMONY BY THE STATE REGARDING
PHYSICAL CONDITION OF VICTIMS.    DENIED WITHOUT PREJUDICE TO RE-FILING DEPENDING ON HOW
THE STATE ELECTS TO PROCEED.

06/06/2003 MOTION - MOTION TO SUPPRESS STATEMENT DENIED ON 06/06/2003
JOHN R ATWOOD , JUSTICE
COPY TO PARTIES/COUNSEL

06/06/2003 MOTION - MOTION TO SUPPRESS STATEMENT DENIED ON 06/06/2003
JOHN R ATWOOD , JUSTICE
COPY TO PARTIES/COUNSEL

06/06/2003 MOTION - MOTION TO SUPPRESS STATEMENT DENIED ON 06/06/2003
JOHN R ATWOOD , JUSTICE
COPY TO PARTIES/COUNSEL

06/06/2003 ORDER - COURT ORDER FILED ON 06/06/2003

ORDER ON MOTION TO SUPPRESS

A TRUE COPY
ATTEST: _____
                    Clerk