STATE OF MAINE                                          SUPERIOR COURT
CUMBERLAND, SS.                                         CRIMINAL ACTION
                                                       Docket No.   CR-02-1448

STATE OF MAINE

v.                                              DECISION AND ORDER
                                                   ON DEFENDANT'S
ELIZABETH BURGESS MERRILL,                        MOTION TO SUPPRESS

        Defendant

                                                     AUG 18 2003

A True Copy,
Attest: _____
              Clerk of Court

        The defendant is charged by indictment with seven counts of sexual assault or

contact[1] throughout the summer of 2001, involving a teenage boy who was a friend of

the family and lived in the neighborhood.

        In defense of this case, defendant has moved to suppress as evidence at trial all

statements that she made to investigating detectives, including incriminating

information to detective Gerard "Biff" Brady during a pre-polygraph interview and a

subsequent written statement.

        The defendant's involvement with investigators began when detective Randy

Staples and Dennis Murphy, a child protective caseworker from the Department of

Human Services, visited her home.  Murphy was present to make sure that the Merrill

children were not in any danger.

        The defendant alleges that statements made by Staples to her concerning lawyers

were misrepresentations of her rights and the future course of the case; that these

misrepresentations gave her a false security that caused her to not seek the advice of an

attorney.  She relies on *State v McConkie*, 2000 ME 158, 755 A.2d 1075, that a detective's

representation that statements by the defendant would remain confidential was

---

[1] Three counts of unlawful sexual contact, one count of attempted gross sexual assault, and two counts of gross sexual assault.

incorrect and induced the defendant to speak. His statements were ruled inadmissible and subject to suppression because the detective deceived the defendant as to his Fifth Amendment privilege against self-incrimination. *Id.* at ¶ 10, 755 A.2d at 1078.

In this case the court presided over a lengthy hearing held in several parts and has reviewed the videotape of Ms. Merrill's interview with detective Brady, hearing exhibits, and memoranda submitted by counsel.

There is a conflict in the evidence as to whether Staples stated he hated lawyers or referred to lawyers as "sleazy" or "scum bags;" but even so, these would be his opinion of lawyers and not a misrepresentation of her rights. It is clear from the evidence that Staples was seeking her cooperation and that expressions of helpfulness to her and towards the victim, and expressions that he appreciated her cooperation and truthfulness are a normal part of an investigation to not intimidate a suspect.

Staples testified, corroborated by Murphy's testimony, that she was helpful and concerned and showed no trepidation about talking with them. She was cooperative and appeared to want to help. He told her that he believed her to be trustworthy and that it was his job to find out the facts. He denies making the disparaging remarks about lawyers.

It is clear that as an experienced detective, part of his investigation into the facts involves gaining the confidence and trust of suspects. This is not an improper tactic so long as it does not involve misrepresentation or intimidation.

It was at their third meeting on March 21st that the subject of a polygraph first came up. Merrill said that she "wanted to think about it." It was later arranged for March 25th. Staples met the defendant at her home and drove her to the Sheriff's Department office in Portland.

The court finds beyond a reasonable doubt that the defendant was not in custody at any time: Not during any of Staples' visits to her home; not during the ride to the sheriff's headquarters; nor during the interview with Brady in his closed office. Because she was not in custody, "*Miranda*" was not required; however, it is still necessary for the State to demonstrate that the defendant's statements were voluntary and not the subject of coercion.[2]

Detective Brady thoroughly and painstakingly explained her rights to her in full. The defendant continually asked questions during the process demonstrating an awareness and consciousness of her rights. There is no doubt that she was nervous and apprehensive, but there is no evidence of coercion or subterfuge by Brady. Brady exhibited a straightforward calm demeanor. He urged her only to tell the truth. Although Brady did most of the talking, Ms. Merrill freely, willingly, and unhesitatingly, responded "yes," "no" or "um-huh." Although her answers were brief and not in the narrative, they were appropriately responsive to the questions resulting in a very interactive conversation. Ms. Merrill was told that she was not in custody, that the door was closed for privacy, that it was not locked and that she could leave at any time or go out to use the rest room.

As detective Brady talked to her to gain her confidence, he spoke more of the details of the allegations. Ms. Merrill eventually acknowledged her conduct with the boy and then became a little more reserved, but showed no sign of reluctance or reservation to speak.

The defendant's motion, however, is based on more than an alleged violation of her rights during a custodial interrogation. She asserts that detective Staples made

---

[2] The fact that the defendant was not advised of her

3

repeated affirmative misrepresentations during his visits to her home, that she relied upon them, believing that her cooperation would only be of benefit to the investigation, would assist the victim, and would not place her or her family in any jeopardy.[3]

The defendant claims that Staples said he hated lawyers, that they were "sleazy" and "scum bags," and that because he believed she was telling the truth, she did not need counsel.

The statements attributed to Staples are contested. He denies that he ever made the comments.

The State contends that when he first visited the Merrill home on March 19, 2002, that he informed her why he and Mr. Murphy were present, and that he needed to resolve "issues of sexual touching." She denied any improper conduct at all times until her meeting at the sheriff's department headquarters on March 25th.

This case is distinguished from *McConkie*: There the defendant's incriminating statements were a direct result of the detective's assurances of confidentiality. If any statements by Staples to Merrill were inaccurate they are not the catalyst for the defendant's incriminating statements made to Brady and her written version to Staples thereafter. Brady's interim non-custodial recitation of her rights almost a week later serves as a buffer and corrected any misapprehension that Merrill may have had about her rights.

The clerk will incorporate the following Order into the docket by reference:

MOTION DENIED.

DATED: June 16, 2003

Thomas E. Delahanty II
Justice, Superior Court

---

[3] She further argues that Staples' representations led her family to urge her to cooperate and not contact an attorney. Any rights asserted here are personal to her. The court does not consider personal feelings or opinions about her rights expressed by other family members.

4